RICHARD LATHERS, Appellant, *v.* CHRISTOPHER KEOGH, Respondent.

On August 4, 1883, the parties entered into a contract, by which defendant agreed to sell and plaintiff to purchase certain real estate situate in New York city, the conveyance to be made August twenty-third by warranty deed, "free and clear of all incumbrances," except certain specified mortgages. The contract provided that the seller should take such portion of the rents and profits " as is for a period prior to or is earned up to September 1, 1883," irrespective of the time when they became due, and that " calculations and adjustments of the exact amounts to be paid as to rents, interest, etc.," should be made as if the contract was performed September first. The deed was delivered on the day fixed, and the parties then effected between themselves an adjustment and settlement of the rents and profits up to September first. Prior to the making of the contract an assessment of the property for the tax of the year 1883 had been made, but the calculation of the tax was not made until thereafter and the tax was confirmed August twenty-ninth, which, upon defendant's refusal, plaintiff was compelled to pay. In an action to recover the amount so paid, *held,* that it was not a charge or incumbrance upon the property which defendant was legally bound to pay under the covenant in his deed, nor was he obligated to pay it under the provision of the contract as to adjustment of " rents, interest, etc.;" that the symbol " etc.," had reference only to such matters as bore some relation to the current and accrued earnings and liabilities of the premises; *i. e.,* matters similar in their nature to those named; that a tax was not analogous; and that plaintiff was not entitled to recover.

Where a contract has been fully performed within its apparent intent and reasonable requirement, to the satisfaction of the parties at the time, and it is not made to appear that there was any mutual error arising from a mistake of fact or any fraud, the court will not interfere.

Until the amount of a tax is ascertained and determined in the manner prescribed by law, no lien or incumbrance exists by reason thereof.

*De Peyster* v. *Murphy* (66 N. Y. 622) distinguished.

*Barlow* v. *St. N. Nat. Bank* (63 N. Y. 399) distinguished and limited

(Argued April 25, 1888; decided June 5, 1888.

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 8, 1886, which reversed a judgment in favor of plaintiff, entered upon an order overruling a demurrer to

plaintiff's complaint and which sustained the demurrer. (Reported below, 39 Hun, 576.)

This action was brought to recover the amount of a tax upon certain real estate situate in the city of New York, purchased by plaintiff of defendant, which plaintiff had been compelled to pay, but which he claimed defendant, under his contract of sale and under the covenants in his deed, was obligated to pay.

The facts alleged in the complaint are, so far as material, stated in the opinion.

*William C. Trull* for appellant. Under the system of taxation prevailing under the statutes applicable to the city of New York, there was no power in anyone, subsequent to May 1, 1883, to take the premises in question from the assessment-roll, or to alter modify or change the charge or assessment of $39,000, imposed upon them. (Laws of 1882, chap. 410, §§ 814, 817, 819; *People* v. *Commissioners*, 91 N. Y. 604; *Association for Colored Orphans* v. *Mayor, etc.*, 104 id. 581, 590, 604; *People ex rel.* v. *Commissioners*, 11 Hun, 505, 508; *McMahon* v. *Beekman*, 65 How. Pr. 427; *Rundell* v. *Lakey*, 40 N. Y. 513; *De Peyster* v. *Murphy*, 66 id. 622.) The calculations and adjustments of the exact amounts to be paid by each party, as respects "rents, interest, etc., should be made the same as if the contract were carried out and the deed delivered on 1st of September, 1883." (Bouvier's Law Dictionary; Webster's Dictionary; Worcester's Dictonary; *Commonwealth* v. *Ross*, 6 Sergt. & Rawle, 427; *Bardstown R. R. Co.* v. *Metcalfe*, 4 Metc. [Ky.] 211.) The interpretation to be given to the special agreement in the contract is that which the vendor of the property would reasonably suppose would be given to it by the vendee. (*White* v. *Hoyt*, 73 N. Y. 511.) The question as to the construction of the special agreement contained in the contract of purchase was, under the circumstances of this case, a mixed question of law and fact, and so not properly disposed of upon demurrer. (*White* v. *Hoyt*, 73 N. Y. 511; *French* v. *Carhart*, 1 id. 96

102; *Moore* v. *Meacham,* 10 id. 211; *Dana* v. *Fiedler,* 12 id. 40; *Pollen* v. *Le Roy,* 30 id. 550; *Field* v. *Munson,* 47 id. 221; *Bissell* v. *Campbell,* 54 id. 353; *Pettit* v. *Shepard,* 32 id. 97; *Harris* v. *Rathbun,* 2 Abb. Ct. App. Dec. 326; *Simond* v. *First Nat. Bank,* 93 N. Y. 269; *Truscott* v. *King,* 6 id. 272; *White's Bank* v. *Myles,* 73 id. 335; *Sale* v. *Darrah,* 2 Hilt. 185.)

*A. H. Stoiber* for respondent. The tax in suit was not a lien or charge on the premises on the day of the delivery of the deed, and did not become a lien or charge on the land until its confirmation, which took place after such delivery. (*Barlow* v. *St. Nicholas Bank,* 63 N. Y. 399, 402, 404; *Skidmore* v. *Hart,* 13 Hun, 441; *Dowdney* v. *Mayor, etc.,* 54 N. Y 186.) No liability on defendant's part can be based on any implied covenant. (2 R. S. 738, § 140.) The complaint alleges no valid cause of action based on the contract for the conveyance, or on any covenant therein contained. (*Dowdney* v. *Mayor, etc.,* 54 N. Y. 189; *Commonwealth* v. *Ross,* 6 S. & R. 427.) The complaint, to be sufficient on plaintiff's contention, should have contained allegations of mistake on the part of the plaintiff. (*Clark* v. *Dutcher,* 9 Cow. 647.) Even if such allegations had been made they would not constitute any cause of action and plaintiff cannot recover thereon. (4 Wait's Actions and Defenses, 488; 7 id. 402, 403, 478; *Weed* v. *Weed,* 94 N. Y. 243.)

GRAY, J. The contract in this case, by which the defendant undertook to sell and the plaintiff undertook to purchase the property described therein, was dated August 4, 1883, and called for the execution and delivery on the twenty-third day of that month, by the seller, of a " warranty deed with full covenants, conveying  *  *  *  the lands and premises, with the six houses thereupon erected, free and clear of all incumbrances," except certain described mortgages. The contract further contained this provision, that " the calculations and adjustments of the exact amounts to be paid, as to

rents, interest, etc., shall be made the same as if this contract were actually carried out and performed on September 1, 1883, at twelve M. It is hereby understood and agreed by and between the respective parties hereto, that all rents, issues and profits of the respective lands and premises hereby agreed to be conveyed, or of any part or portion thereof, shall be apportioned as of September 1, 1883, so that the seller shall take all such portion of such rents, issues and profits as is for a period prior to or is earned up to September 1, 1883, and the remaining portion shall go to the purchaser, irrespective of the time when such rents, issues and profits may be due."

The reason for the insertion of such a clause as the one just quoted from the contract, is found in the fact that there were buildings standing upon the premises. The question of the apportionment of the rental moneys earned by them and the adjustment of the liabilities incurred for insurance, gas and other such like current and usual charges against a building, as well as of the amount of interest accrued upon the existing mortgages, very naturally presented itself to the parties and became the subject of an agreement as to their disposition.

When the day came for the delivery of the deed of the property, viz., August twenty-third, the parties effected between themselves a settlement and adjustment of the various items of rents accrued and of liabilities thus far incurred for the mortgage interest and the insurance and gas charges. The defendant, in this adjustment, was allowed for the rents of the property for the whole month to September first, and was debited with the interest, insurance and gas charges up to that date. Thereupon, and in pursuance of the contract, the defendant delivered to the plaintiff a deed of the premises, which had been executed and acknowledged as of August twenty-third, and which contained a covenant that the premises were " free, clear, discharged and unincumbered of and from all　*　*　*　charges　*　*　*　taxes, assessments and incumbrances of what nature or kind soever," expect the mortgages described in the contract. Subsequently

to this delivery of the deed and on August twenty-ninth, a tax for the year 1883 upon the conveyed premises was confirmed, which, upon defendant's refusal, plaintiff was obliged to pay, and he now insists that this tax was a charge upon the property prior to the delivery of the deed, which defendant. is legally bound to discharge, under the covenant in his deed and also under the provision in their contract that "calculations and adjustments of the exact amounts to be paid as to rents, interest, etc.," were to be made as though the contract. was performed on September first.

In this contention we think he is in error.

Considering in the first place this contract, we are unable. to perceive that it is either defective in its terms or made ambiguous by the addition of the symbol "etc." after the words "rents" and "interest." Used in the way it was by the parties, this sign or symbol must be deemed to have reference only to such matters as bore some relation to the current. and accrued earnings and liabilities of the premises, and which, obviously, had to be in some way adjusted between seller and purchaser. Such matters would naturally be within the contemplation of the parties and furnish the subject. for an agreement controlling the amount of moneys which should pass upon the closing of the transaction of sale.

In the interpretation of contracts, effect must be given to the intent of the parties; and, to that end, we may consider the circumstances of their situation and the subject-matter of their meeting. So viewed here, no real difficulty arises and no misapprehension should exist as to the intention of these parties when they made their agreement. They, in fact, have given a practical interpretation to it by their acts on August. twenty-third, when the title passed. Where a written contract has been fully performed within its apparent intent and reasonable requirements, and to the evident satisfaction of the parties at the time, and it is not made to appear that there was any mutual error arising from a mistake of fact, or any practicing of fraud, courts should not interfere. In the particular provision of this contract we have been considering,.

we see no ground for holding that its language imported other matters of adjustment than those similar in their nature to what were named, and we see no reason for holding that a tax, which is made by the law a lien upon property, is analogous to items of rents or interest moneys. The whole clause, read together, indicates plainly the design of the seller and excludes the idea of any legally created lien being within its provisions.

Considering, then, the covenant in the grantor's deed that the property was free, clear, discharged and unincumbered of all charges, taxes, assessments and incumbrances, we do not find that he was placed under any liability for the annual tax. If, at the time the covenant was made, the property was incumbered by any tax, the vendor was liable. That the property was the subject of taxation does not control the question. Until the amount of the tax is ascertained and determined no lien or incumbrance exists by reason thereof, and we think that the proper construction of this covenant merely calls for the freedom of the property, at the time of conveyance, from what can be considered an incumbrance upon the property; not freedom from some undetermined matter which may ripen into a charge, imposed as a lien by law, but freedom from a visible and ascertained incumbrance. The tax upon taxable property is imposed, under the system of taxation in the city of New York, by the board of aldermen, who act, in determining thereupon, upon the assessment-rolls prepared for them by the commissioners of taxes and assessments, and upon a statement which is furnished them by the comptroller, for the purpose of imposing the annual taxes and which sets forth the amounts by law authorized to be raised by tax in that year on account of the city's needs and purposes and the probable amount of receipts from all sources of revenue. They are then to estimate and compute the taxes for the year. Having done so and having examined the assessment-rolls and made any necessary alterations permitted by the law, the board must set down against each item of property the sum in dollars and cents which is to be paid as a tax thereon. When

these and other duties, not necessary to be particularized here, have been performed, the assessment-rolls are only then completed and prepared for confirmation and ready to be transmitted to the receiver of taxes. Until these requirements of the law have been fulfilled the tax is not due or payable, and no lien attaches to the property nor can any legal charge for any tax be said to rest upon it. Jurisdiction appertains to the board of aldermen to annex a tax to the name of a person and the property described as his, and all steps leading to that exercise of power by that body are initial only in the proceedings which result in taxation, and in no sense impose a charge or create an incumbrance upon the land described in the assessment-roll.

We do not think, therefore, that an assessment or a tax exists as an incumbrance, or as a charge upon lands in the roll, within the meaning of a covenant in a deed against charges, taxes, assessments and incumbrances, until it has been confirmed and the amount thereof has been determined in the methods prescribed. In the case at bar the complainant alleged that subsequent to August fourth the calculation of the tax to be imposed was made, and a tax of $893 was imposed upon said premises, and on August twenty-ninth said tax was duly confirmed. This fact is admitted by the demurrer to the complaint. The views we have expressed are supported by the cases of *Dowdney* v. *Mayor, etc.* (54 N. Y. 186); *Barlow* v. *St. Nicholas National Bank* (63 id. 399); *Fisher* v. *Mayor, etc.* (67 id. 73), and *Association for Colored Orphans, etc.*, v. *Mayor, etc.* (104 id. 581).

Appellant's counsel cites *De Peyster* v. *Murphy* (66 N. Y. 622), in support of his contention. In that case MILLER, J., held, that under such a covenant as the one here, an assessment for improvement was a charge against the person and the property and was fairly embraced within the meaning of the covenant, without regard to the question whether it was a lien under the statute. The assessment was confirmed by the board of revision and correction of assessments on November seventh, the work having been completed in May; but the

assessment was not entered in the title book of assessments in the bureau of arrears until December twenty-fourth. The deed bore date December fifth, and it was claimed that the amount did not become a charge until it was entered in the title book. The statute provided that no assessment for any city improvement shall be deemed to be fully confirmed so as to be due and to be a lien upon the property until entered as mentioned. But the case was peculiar. The learned judge said: "At the time when the contract was entered into the improvement had been made; the plaintiff was in the full enjoyment of the benefits arising from the same, and it evidently constituted a portion of the value of the premises and entered into the consideration upon the sale of the same." He held that although an assessment which had been made and confirmed, was not a lien for the purposes of the statute, it was, nevertheless, a charge "against the party which incumbered the premises and against which he was bound to provide." He said: "It may be conceded, as was recently held by this court in *Barlow* v. *St. Nicholas Bank*, that a tax on real estate must be complete before it becomes a lien on the same, and yet a grantor be liable for an assessment or charge, where the intention of the parties is clear and the covenant clearly covers such a liability as this." And, referring to *Dowdney* v. *Mayor*, etc., Judge MILLER further says: "The assessment was not confirmed in that case until after the conveyance was made, and the amount, at that time, had neither been ascertained or determined." An obvious distinction is thus seen to exist between an assessment for a completed street improvement and the assessment of an annual tax. In the former case, although not a lien upon property by statute, yet, if confirmed, it has become a charge; whereas, in the latter case, until the annual tax is ascertained and extended, and the exercise of the duties in that respect completed by the board, to whom power in that respect belongs, no charge or incumbrance is created.

The case of *Rundell* v. *Lakey* (40 N. Y. 513), also cited by appellant, was decided by a divided court, and was the

subject of consideration by ANDREWS, J., in *Barlow* v. *St. Nicholas National Bank (supra)*. While some of the expressions of GROVER, J., who delivered the opinion in *Rundell* v. *Lakey*, may seem to conflict with our views in this case, we are inclined to adopt the principles laid down in *Barlow* v. *St. Nicholas National Bank*. In that case the question discussed was whether there was a breach of the covenant against incumbrances. ANDREWS, J., who rendered the opinion, refers, in the first place, to the case of *Rundell* v. *Lakey*, and says (p. 400): " In *Rundell* v. *Lakey et al* (40 N. Y. 513), the plaintiff, to whom the defendants, intermediate the completion of the assessment-roll and the levying of the tax by the board of supervisors, had conveyed certain premises, with covenant for quiet enjoyment, was called upon by the collector of the town, after the tax had been levied and the warrant for its collection had been issued, to pay it, and at the request of the defendants and upon their agreement to refund the amount to him ' in case they were legally liable to pay it,' paid the tax and afterwards brought his action against them to recover the amount paid.     *     *     * Five judges concurred in the result. GROVER, J., who delivered the only opinion in the case, places. his judgment upon the effect of the agreement considered in connection with the fact that, under the tax laws, the owner of real estate residing in the town or ward where it is situated and to whom it is assessed, is primarily liable for the payment of the tax subsequently imposed under the assessment, although he may have parted with his title, after the completion of the assessment-roll by the assessors, and before the levying of tax by the board of supervisors. HUNT, Ch. J., and MASON and JAMES, JJ., were of opinion that the plaintiff was entitled to recover, independently of the agreement upon the covenant in the deed. DANIELS, J., was for affirmance, upon the ground that the tax could have been collected by the collector from the defendants, and that they were liable to pay it within the meaning of the agreement. LOTT, J., dissented and WOODRUFF, J., did not vote."

Judge ANDREWS, in his opinion, held that "no lien or incumbrance on the lands assessed is created by the act of the assessors. The assessment is the basis upon which the board of supervisors act in apportioning the tax, but it is in no sense the imposition of a charge upon the land described in the roll. This is one of the preliminary steps which result in taxation. So is the election of assessors, and taxation of the lands within the town is as certain to take place before the assessors commence making the roll as after it is completed. The arrangements of the statute necessarily lead to the imposition of taxes at each annual meeting of the supervisors. The roll, when completed, fixes the valuation of the property to be taxed, but it does not determine the amount of the tax, and the most which can be claimed is that it renders more certain and definite the liability to taxation which, nevertheless, existed before the assessment was made. The language of the covenant in the defendant's deed is, that the premises "are free and clear from all incumbrances whatsoever." The covenant against incumbrances is a covenant in *presenti*, and, like the covenant of seizin, if broken at all, is broken as soon as the deed is executed. (4 Kent's Com. 471; Rawle on Contracts of Title, 89; *Horton* v. *Davis*, 26 N. Y. 495.) The right of action accrues at once, and, unless an action will lie immediately, there is no breach of the convenant. The covenantee suing upon such a covenant may be restricted to nominal damages where he has not been subjected to actual loss. (*Delavergne* v. *Norris*, 7 J. R. 358; *Hall* v. *Dean*, 13 id. 105); but the right of action, when it exists at all, is complete the moment the covenant is made. If the plaintiff had brought his action the day after he took his deed could he have maintained it? I think not. The answer would have been perfect, that the entry of the land in the assessment-roll constituted no incumbrance."

In a very recent case of the *Association for the Benefit of Colored Orphans, etc.,* v. *Mayor, etc.* (104 N. Y. 581), PECK-HAM, J., said, as to the lien of a tax, where plaintiffs took title by deed dated July 31, 1877, and the tax was not confirmed

until October, 1877 (p. 588). "In questions arising under covenants in deeds as to incumbrances it has been decided that no lien or incumbrance, by reason of a tax, existed until the amount thereof was ascertained or determined." And, again, "it may be conceded that technically there was then no lien."

We are of the opinion that the judgment and order appealed from should be affirmed.

All concur, except EARL, J., not voting.

Judgment affirmed.