JAMES BUCKHOUT, Appellant, v. THE CITY OF NEW YORK, Respondent.

TAX — NEW YORK CITY — EFFECT OF ASSESSMENT MADE WHILE PRO-CEEDING FOR CONDEMNATION OF PROPERTY BY CITY IS PENDING — TAX NOT A LIEN, WHEN TITLE PASSED TO CITY BEFORE CONFIRMATION OF ASSESSMENT ROLL. Where the report of commissioners in condemnation proceedings instituted by the city of New York to acquire certain real estate for municipal purposes, which awarded a certain sum to the owner thereof "for land and improvements," was confirmed by the court on

December 23, 1897, and the title to the property was taken thereunder by the city on July 6, 1897, the owner is not liable for the taxes levied on the property under an assessment roll in which the property was listed and valued as of the second Monday of January, 1897, where the assessment roll was not acted upon and confirmed by the municipal authorities until August 24, 1897, one month and sixteen days after the title had passed from the owner to the city; the tax never became a lien upon the land, since when the assessment valuation was made condemnation proceedings were in progress, and by due course of procedure the city became the owner of the property more than six weeks before the assessment was completed, and a tax, whether imposed upon property or upon the person of the owner on account of his ownership of the property, cannot be enforced if, before the tax becomes a lien, the city suspends its power of taxation by taking the property away from the owner through the power of eminent domain.

*Buckhout* v. *City of New York,* 82 App. Div. 218, reversed.

(Argued October 20, 1903; decided November 10, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered in favor of defendant April 29, 1903, upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Charles L. Guy* for appellant. An assessment, until confirmed, is not a tax, and, therefore, not legally chargeable as a debt. (*Coudert* v. *Huerstel,* 60 App. Div. 85; *Lathers* v. *Keogh,* 109 N. Y. 583; *Matter of Maresi,* 74 App. Div. 79.) Unconfirmed taxes cannot be considered by the commissioners in making their award. (*Matter of Mayor, etc.,* 40 App. Div. 281; *Matter of Riverside Park,* 59 App. Div. 603.) Condemnation proceedings are plenary in their nature, and the rights of property owners should be strictly guarded. (Cooley on Const. Law [3d ed.], 365; *Matter of Water Comrs. of Amsterdam,* 96 N. Y. 351; *Matter of R. El. Ry. Co.,* 123 N. Y. 351.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly, James M. Ward* and *David Rumsey* of counsel), for respond-

ent.   In the tax district comprising the city of New York, where property is lawfully assessed on the second Monday of January in any year, neither a change of ownership nor use after the books close will affect any liability lawfully attaching on the second Monday of January in any year.   (*People ex rel.* v. *Coleman*, 126 N. Y. 433 ; *Rundell* v. *Lakey*, 40 N. Y. 516 ; *Matter of Babcock*, 115 N. Y. 458.)   The plaintiff's liability to pay any tax to be extended against the assessment upon his property for the year 1897 became fixed on the second Monday of January in that year.   (*McMahon* v. *Beekman*, 65 How. Pr. 427 ; *Assn. for Orphans* v. *Mayor*, etc., 104 N. Y. 581 ; *Mygatt* v. *Washburn*, 15 N. Y. 316 ; *Sisters of Poor* v. *Mayor, etc.*, 51 Hun, 355 ; *Matter of A. F. A. Society*, 6 App. Div. 496.)

VANN, J.   On the 6th of November, 1896, the proper authorities of the city of New York took the initial steps to acquire certain real property belonging to the plaintiff situate in said city.   On the 22d of December, 1896, commissioners of estimate and assessment were appointed, and on the 19th of February, 1897, a resolution was adopted by the board of street opening and improvement, as authorized by statute, providing that title to said land should vest in the city on the 6th of July following.   On the 23d of December, 1897, the report of the commissioners, made seven days before, was confirmed, whereby the plaintiff was awarded the sum of $127,312.50 "for land and improvements."   The improvements were worth about $6,000.

On the second Monday of January, 1897, the plaintiff, then a resident of the city of New York, was "assessed upon the said property by name as its owner for purposes of local taxation for the year 1897."   No application was made by the plaintiff to correct the assessment, and on the 24th of August, 1897, the local taxes for that year were duly confirmed and the amount extended opposite the description of the plaintiff's land was the sum of $945.   On the 15th of January, 1898, the whole amount of said award was paid over to the plaintiff,

but only upon the condition required by the comptroller that he should deposit his certified check for the sum of $1,100, as security for the payment of said taxes, provided it should be held that they were chargeable against him. It was understood that the check should be retained by the comptroller until the determination of the question whether the unconfirmed taxes of 1897, standing against the property at the time title thereto vested in the city of New York, "should properly be deducted from the amount of said check," which has not been cashed but is held by the comptroller to await the result of this action. Upon the submission of the controversy, the plaintiff demanded judgment for the sum of $1,100, or the return to him by the defendant of his check for that amount, while the defendant demanded judgment for the amount of said taxes for the year 1897. The Appellate Division, by a divided vote, overruled the contention of the plaintiff and ordered judgment in favor of the defendant for the amount of said taxes. From the judgment entered accordingly the plaintiff appealed to this court.

The award is presumed to cover the value of the land at the time when title passed to the city, but the owner is also entitled, "in addition to the value of" the property at that date, "to the amount of all taxes and assessments levied or imposed upon the property" after that date, "which shall have been actually paid by the owner." (*Matter of Mayor, etc., of N. Y.,* 167 N. Y. 627, 628.) If, however, after the passing of title, the owner remains in possession and receives an income from the property, it is to be deducted from or applied upon the taxes so paid. (*Matter of Mayor, etc., of N. Y., supra; Matter of Board of Education of N. Y.,* 169 N. Y. 456, 459.) It does not appear and cannot be presumed that the plaintiff had the use of the land after the title vested in the city, and hence, if he had paid the tax in question, according to the authorities cited, he would have been entitled to receive the amount thereof in addition to the value of the property at the time of appropriation. (Id.)

When *Matter of Mayor, etc., of N. Y.* (*supra*), sometimes

cited as *Matter of Riverside Park*, was before the Appellate Division, Mr. Justice Patterson, who wrote for that court, said, "We conceive the proper rule in this case to be that interest and taxes are to be added to the award, but, as an offset, a deduction may be made of rentals actually received by the owner, or where rentals have not been received, of the value of the use and occupation of the premises from the date of the appropriation of the property to the time of the award. As these subjects of deduction are in the nature of offsets, we are of the opinion that the burden is upon the city to show what amounts should be allowed by way of deduction." (59 App. Div. 603, 606.)   When that case came to us certain questions were certified for decision, and among them the following: " In a proceeding to ascertain the compensation which shall be paid to the owners or persons interested in real property, the title to which is acquired under chapter 152 of the Laws of 1894, are the owners of such real property entitled, in addition to the value of said real property on the date of the passage of said act, to the amount of all taxes and assessments levied or imposed upon the property sought to be acquired after the passage of the act and which shall have been actually paid by said owners ? "

We affirmed the order appealed from, answered the question certified in the affirmative and adopted Justice Patterson's opinion.   While that case arose under a different statute from that under which the plaintiff's land was condemned, the provisions of both are the same in substance so far as the vesting of title, the award and the effect thereof are concerned.

The court below sought to distinguish that case from the one under consideration on the ground that in the former the award was of a fixed sum " subject to the lien of all unpaid taxes, assessments and water rates," while it does not appear that the award in this case contained any statement upon the subject of unpaid taxes.   The statement of facts upon which the controversy now before us was submitted simply says that the plaintiff was awarded "the sum of $127,312.50 for land and improvements," and it cannot be presumed, under all the

circumstances, that the commissioners took into account or included in the award the tax in question.

According to the statute in force when the tax was in form assessed, real property in the city of New York was listed and valued as of the second Monday in January, and from that date until the first of May valuations thus made could be corrected, but after that date the books were closed to enable assessment rolls to be prepared for delivery to the municipal assembly on the first Monday of July. (City charter, L. 1897, ch. 378, §§ 889, 892, 895, 907.) The assessment rolls were perfected by the action of the municipal assembly, which fixed the amount of the tax upon each piece of property, and on or before the first of September the completed rolls were delivered, with the proper warrants attached, to the receiver of taxes, who was thereupon required to collect the amounts as extended in a column opposite the valuations. (Id. §§ 909, 910.) The municipal assembly did not finally act upon the rolls in question until the 24th of August, which was one month and sixteen days after title to the land formerly belonging to the plaintiff had passed from him to the city. The taxes never became a lien upon the land, which on the 6th of July was transferred by the act of the defendant from the status of assessable property to that of property exempt from taxation because it was owned by the city. When the valuation was made condemnation proceedings were in progress, and by due course of procedure the city became the owner of the property more than six weeks before the assessment was completed. Condemnation is, in substance, a compulsory sale and so far as its effect upon concurrent taxation is concerned, may properly be treated the same as if the sale had been voluntary. If the plaintiff had voluntarily conveyed his land to the defendant on the 6th of July, 1897, the city would have taken the same title as an ordinary grantee, and even a covenant by the plaintiff in the deed that the premises were free and clear from all incumbrances would not have enabled the city to compel him to pay the tax. (*Lathers* v. *Keogh,* 109 N. Y. 583; *Dowdney* v. *Mayor, etc., of N. Y.,* 54 N. Y. 186.) As

was said by Judge GRAY in the case first above cited : " Until the amount of the tax is ascertained and determined, no lien or incumbrance exists by reason thereof, and we think that the proper construction of this covenant (against incumbrances) merely calls for the freedom of the property, at the time of the conveyance, from what can be considered an incumbrance upon the property ; not freedom from some undetermined matter which may ripen into a charge, imposed as a lien by law, but freedom from a visible and ascertained incumbrance."

Whether, as a general rule, a completed tax creates a debt against the owner, as a primary liability with a lien on the land as security or not, we think that in this case the passing of title to the city exercising the taxing power before the assessment ripened into a lien, destroyed the basis and consideration for the tax, and prevented the enforcement thereof either as a personal liability or a lien. A tax, whether imposed upon property or upon the person of the owner on account of his ownership of the property, cannot be enforced if, before the tax becomes a lien, the city suspends its power of taxation by taking the property away from the owner through the power of eminent domain. The city cannot tax and condemn at the same time. The exercise of the power of condemnation, when completed, excludes the power of taxation, so far as the property taken is concerned. After the sixth of July, 1897, when the city took the property as its own, it could not lawfully fix the amount of the tax or extend it to the column opposite the valuation, or take any step to convert the assessment or valuation previously made into a complete tax, definite in amount and capable of enforcement. Taxation cannot create a debt until there is a tax fixed in amount and perfected in all respects. It is not enough to lay the foundation, but the structure must be built. There cannot be a complete tax laid upon real estate until it is so perfected as to become a lien, because until then the amount cannot be known. The rights of the owner and the city became fixed on the day when title vested in the latter, and unless at that time there was a tax which could be enforced as a debt without further action to

24

fix the amount, there never was, for after the city had taken
the property by force and had it as its own, it could not, by
proceedings on its part, create or perfect a personal liability
against the owner on account of that property. A city can-
not eat its cake and have it any more than a citizen. It cannot
commence proceedings to tax, then take away the property,
and after that complete the process of taxation. From the
moment the plaintiff ceased to be the owner he was relieved
of all the burdens of ownership. The power of taxation by
the city ceased when the power of eminent domain destroyed
private ownership and turned the property over to the city. It
was the act of the city itself in condemning the property
which brought about this result, for if the appropriation had
been by a railroad company, it would have had no effect upon
the right to mature and collect the tax.

Jurisdiction to assess in the city of New York on the first
Monday of January ordinarily gives jurisdiction to complete
the assessment regardless of transfers or changes of residence
in the meantime. Grants of property voluntarily made, after
it has been listed and valued, but before the tax is confirmed
and completed, do not concern the city nor prevent it from
taking the course of procedure prescribed by statute. Such
were the facts in the cases chiefly relied upon by the respond-
ent, which hold that ordinary changes of ownership do not
affect subsequent action to complete the tax, but this was not
an ordinary change, nor one for which the city had no responsi-
bility. It is not a case of sale by one citizen to another citizen,
which would not arrest action by the city to mature the tax,
but of condemnation by the taxing power itself of the prop-
erty of a citizen, which necessarily precludes further efforts by
that power to finish and fasten a liability on the former owner
because he once owned the property. By no act of his did he
cease to be the owner, and by no act of the city, after it became
the owner, can a personal liability be completed and enforced
against him.

For these reasons we think that the judgment of the Appel-
late Division should be reversed and judgment rendered in

favor of the plaintiff for the return to him by the defendant of his check for $1,100, unpaid, or, in default thereof, for the amount of said check, with costs in both courts.

PARKER, Ch. J., HAIGHT, MARTIN, CULLEN and WERNER, JJ., concur; GRAY, J., dissents on ground that it is to be presumed that the commissioners, in making their award at a time subsequent to the levying of the annual tax, took into consideration the amount of the plaintiff's indebtedness therefor.

Judgment reversed, etc.