PEOPLE ex rel. BARNARD COLLEGE v. WELLS et al., Tax Com'rs.

(Supreme Court, Special Term, New York County. January 2, 1904.)

1. TAXATION—EXEMPTION.
  A corporation whose property is exempt from taxation takes real estate subject to the taxes, where it acquires title after the tax books for the fiscal year are closed, but before the tax has ripened into a lien.

2. SAME.
  Taxation of real estate is directed against the legal title.

3. SAME.
  The taxable status of real estate is determined by its legal title on the second Monday in January.

Certiorari by the people, on the relation of Barnard College, against James J. Wells and others, as commissioners of taxes and assessments of the city of New York. On motion to quash the writ. Motion granted.

For affirmances of this judgment, see 87 N. Y. Supp. 1143, and 71 N. E. 1136.

George L. Rives, Corp. Counsel (George S. Coleman and E. Crosby Kindleberger, of counsel), for the motion.

Brownell & Patterson (Silas B. Brownell, of counsel), opposed.

LEVENTRITT, J. This is a motion to quash or supersede a writ of certiorari. There is no dispute as to the facts, and the question of law is precisely limited. It is whether a corporation whose property is exempt from taxation takes real estate free from the burden of the tax where it acquires title after the tax books are closed, but before the tax has ripened into a lien. The tax involved is that for the year 1903. On January 12, 1903, being the second Monday, the books containing the annual record of the assessed valuation of real estate were opened for examination, so to remain under the law until April 1st, when they were closed. On January 28th Mrs. Elizabeth M. Anderson offered to purchase for the relator the property in question, provided it could be secured for a stated sum. Negotiations were had which resulted on March 5th in the execution of a contract for the purchase of the property, whereby a part of the price was then paid and provision made for the transfer of title and the payment of the balance on April 14th. The time for closing was subsequently extended to April 18th, when the transaction was consummated; Mrs. Anderson first taking title and then deeding the property to the relator for certain specified college purposes. On July 6th, being the first Monday, the board of taxes and assessments delivered the assessment rolls to the board of aldermen, showing the assessed valuation of the relator's recently acquired property as it had been fixed on the second Monday in January. The municipal assembly thereupon set down in the column provided therefor the amount of the tax, and before September 15th delivered the roll, with warrant, to the receiver of taxes. On October 5, 1903, the tax, pursuant to law, became a lien on the relator's land.

¶ 2. See Taxation, vol. 45, Cent. Dig. §§ 166, 170.

On October 27th the present writ was issued; the alleged ground of illegality. being that the premises are exempt from taxation.

It will be noted that when the books were opened neither the relator nor Mrs. Anderson had any title, legal or equitable, and that the legal title vested in the relator only after April 1st, when the books had been closed. I do not think we are much concerned with the equitable interest acquired by the execution of the contract of purchase on March 5th, for taxation is directed against the legal title. Cooley on Taxation (2d Ed.) p. 731. . It has been uniformly held in this state that the taxable status of property is determined by its condition on the second Monday of January, and that whatever changes occur subsequent to that time do not authorize the commissioners to do anything more than to revise the valuation. "There must be some fixed period during the progress of this taxation at which it can be determined as to whether property is taxable or not taxable." Sisters of St. Francis v. Mayor, etc., 51 Hun, 356, 3 N. Y. Supp. 433, affirmed on opinion below 112 N. Y. 677, 20 N. E. 417. That was a case of the transfer of title between the time of the opening of the books in January and the closing in May, under the Consolidation Act then in force, and it was held that the property was not entitled to the exemption. The present case is stronger, if anything, as title was acquired after the closing of the books. In the case cited a concession on behalf of the respondents that, had the transfer taken place after the closing of the books, the exemption would not attach, is accepted as sound law. The principles enunciated in the Sisters of St. Francis Case are reaffirmed in Ætna Ins. Co. v. Mayor, etc., 153 N. Y. 331, 338, 47 N. E. 593.

The relator relies on the recent case of Buckhout v. City of New York, 176 N. Y. 363, 68 N. E. 659, decided in November, 1903. A careful reading of that authority fails to show any change in the law so far as here applicable. That case involved a tax for the year 1897 on lands condemned by the city. The first steps had been taken in November of the preceding year. In February, 1897, after the tax books had been opened, a resolution was adopted pursuant to law providing that title should vest in the city on July 6, 1897. The local taxes were confirmed on August 24, 1897, and the commissioners' award was confirmed on December 23, 1897. The city claimed the right to offset the amount of the tax against the proportionate amount of the award. The Court of Appeals held that this could not be done. Even though the books were closed when the city acquired title, the act of condemnation arrested its power to complete the tax. The city, which was the taxing power, having taken the property to itself before the tax became a lien, could not thereafter enforce it as a debt. The theory underlying the decision has no reference to the ordinary transactions between private parties, but rests on the idea that the city, acting in the dual capacity of purchaser and taxing power, could not continue to act in the latter capacity after it had perfected its status in the former. No question of exemption was involved. It was simply a case of arrest of power. The proceedings up to that point were perfectly valid. But by its own act the city was declared impotent to take any further steps. "It [the city] cannot commence proceedings to tax, then take away the property, and after that complete

the process of taxation. The power of taxation by the city ceased when the power of eminent domain destroyed private ownership and turned the property over to the city. It was the act of the city itself in condemning the property which brought about this result; for, if the appropriation had been by a railroad company, it would have had no effect upon the right to mature and collect the tax." Page 370, 176 N. Y., page 661, 68 N. E. That the Buckhout Case can have no applicability to that at bar appears plainly from other portions of the opinion, where the court emphasizes the fact that it was not the case of a sale by one citizen to another citizen, a transaction which "would not arrest action by the city to mature the tax."

The decision of this motion can well be rested on the following language in the Buckhout Case, expressive of the settled law of this state:

"Grants of property, voluntarily made after it has been listed and valued. but before the tax is confirmed and completed, do not concern the city, nor prevent it from taking the course of procedure prescribed by statute."

The motion to quash the writ is granted.