different times, the condition of the weather was such that the snow and ice could readily have been removed from the walk. There was a very heavy fall of snow two days before the accident, and, if that were the sole cause of the injuries sustained by the plaintiff, doubtless a recovery could not be had; but it appears by her testimony and by other evidence that she slipped, not on the newly fallen snow, but on old ice, and the facts warranted a finding that the accident was caused not by the recently fallen snow, but by the dangerous formation and accumulation of ice which had existed on the walk for a period of from a week to ten days. In these circumstances, therefore, the city having, so far as this record shows, wholly failed to perform any duty which it owed to the traveling public with respect to keeping this sidewalk free and clear from dangerous obstructions caused by the accumulation or formation of ice, or of ice and snow, or to require the performance of this duty by others, was properly found guilty of negligence by the jury.

---

### In re FREUND'S ESTATE.

(Supreme Court, Appellate Division, First Department. March 10, 1911.)

TAXATION (§ 895*)—TRANSFER TAXES—ASSESSMENT—DEDUCTION OF DEBTS.

A general tax assessment upon land, before the time has elapsed when such assessment can be changed and the tax levied or extended upon the roll, is not a debt to be deducted from the deceased's owner's estate before a transfer tax can be imposed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

Appeal from Surrogate's Court, New York County.

In the matter of the Transfer Tax upon the Estate of Max Freund, deceased. From an order of the Surrogate's Court, assessing a tax, Emily Freund, executrix, appeals adversely to the Comptroller of the State of New York. Affirmed.

Argued before CLARKE, McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Carl S. Stern, for appellant.
Moses R. Ryttenberg, for respondent.

McLAUGHLIN, J. On the second Monday of January, 1909, certain real estate in the city of New York appeared in the annual records of taxation against the name of one Max Freund. On the 27th of January of that year Freund died, owning such real estate, and the taxes thereon, amounting to $3,020.47, were thereafter fixed for the year 1909 and were paid by his executrix. She claims they were a debt of her testator and for that reason should have been deducted before a transfer tax was imposed. The appraiser to whom the matter was referred refused to make such deduction, and the Surrogate's Court, by an order, confirmed his report and fixed the tax. The appeal is from the order refusing to deduct the taxes paid, so

that the question presented is whether, under the facts above stated, they constitute a debt due from the testator at the time of his death; in other words, whether the assessment upon real estate, before the time has elapsed when such assessment can be changed and the tax levied or extended upon the roll, is a debt to be deducted from the decedent's estate before the transfer tax can be imposed.

The testator died only a few days after the real estate in question was assessed for the purpose of taxation and upwards of two months prior to the 1st day of April, during which period such assessment might have been reduced or corrected. Section 892, Greater New York Charter (Laws 1901, c. 466). This section provides that:

"There shall be kept in the several offices established by the Department of Taxes and Assessments books to be called 'the annual record of the assessed valuation of real and personal estate' * * * in which shall be entered in detail the assessed valuation of such property within the limits of the several boroughs of the city. * * * The said books shall be open for public inspection, examination and correction from the second Monday in January until the first day of April in each year, but on said last mentioned day the same shall be closed to enable the board of taxes and assessments to prepare assessment rolls * * * for delivery to the board of aldermen."

Section 896 of the charter provides that:

"The board of taxes and assessments may increase, at any time before the first of April in each year, or may diminish at any time before the closing of the books of 'annual record' on the first day of April in each year, the assessed valuation of any real or personal estate of any individual. * * *"

By section 897 of the charter:

"The board of taxes and assessments is hereby invested with power to remit or reduce where in the opinion of the corporation counsel lawful cause therefor is shown. It may remit or reduce if found excessive or erroneous, a tax imposed upon real or personal property. * * *"

Section 907 provides that the rolls must, on the first Monday of July of each year, be delivered by the board of taxes and assessments to the board of aldermen, and section 911 requires the board of aldermen to deliver the assessments rolls to the receiver of taxes on or before the 15th day of September, and section 914 provides that:

"The receiver of taxes shall immediately after he shall receive the assessment rolls, give public notice * * * that said assessment rolls have been delivered to him and that all taxes shall be due and payable at his office * * * on the first Monday in October. * * * All taxes shall be and become liens on the real estate affected thereby on the day when they become due and payable, as above provided, and shall remain such liens until paid."

At the time of the testator's death there was no existing debt because the taxes had not then been ascertained. All that had been done up to that time was the fixing of valuation, which, unless corrected in the manner pointed out in the statute, constituted the basis upon which the tax was thereafter to be assessed. It was not until after the 1st day of April following the testator's death that the books for correction of taxes were closed. Up to that time the assessment might be changed, and it was only upon the amount of the assessment as existing at the time of the closing of the books that the tax was

to be levied. The assessment of valuations for purposes of taxation and the assessment of taxes constitute two different things. The first does not create an indebtedness, while the latter does. This was pointed out in Dowdney v. Mayor, 54 N. Y. 186, where it was held that "no tax * * * can exist until the amount thereof is ascertained or determined," and in Lathers v. Keogh, 109 N. Y. 583, 17 N. E. 131, where the court said that, after the commissioners of taxes and assessments have delivered to the board of aldermen the assessment rolls, such board "must set down against each item of property the sum in dollars and cents which is to be paid as a tax thereon. When these and other duties not necessary to be particularized here have been performed, the assessment rolls are only then completed and prepared for confirmation and ready to be transmitted to the receiver of taxes. Until these requirements of the law have been fulfilled, the tax is not due or payable, and no lien attaches to the property, nor can any legal charge for any tax be said to rest upon it." In Buckout v. City of New York, 176 N. Y. 363, 68 N. E. 659, the court said:

"Taxation cannot create a debt until there is a tax fixed in amount and perfected in all respects. It is not enough to lay the foundation, but the structure must be built. There cannot be a complete tax upon real estate until it is so perfected as to become a lien, because until then the amount cannot be known."

See, also, Burr v. Palmer, 53 App. Div. 358, 65 N. Y. Supp. 1056. There was, therefore, as it seems to me, on the day the testator died, no debt for taxes then existing which could be claimed as a deduction in the proceedings here under consideration. The assessment or valuation of the real estate as then determined might thereafter have been changed. The assessment rolls had not been delivered to the board of aldermen, and no amount of tax had then been determined. The taxes which were paid had not then been assessed, and all that had been done was laying the foundation for such tax.

In reaching this conclusion I have not overlooked the authorities cited by the appellant; but they do not seem to me to be in point, or are clearly distinguishable from the case here presented.

For the foregoing reasons, as well as those stated in Matter of Maresi, 74 App. Div. 76, 77 N. Y. Supp. 76, where a similar conclusion was reached by the Appellate Division of the Second Department, I am of opinion that the order appealed from is right and should be affirmed, with $10 costs and disbursements. All concur.