**UNITED STATES v. CITY OF BUFFALO.**
**No. 68.**

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1931.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Joseph J. Doran, Asst. U. S. Atty., of Rochester, N. Y., and Harold B. Ehrlich, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for plaintiff-appellant.

Charles L. Feldman, of Buffalo, N. Y. (Herbert A. Hickman, of Buffalo, N. Y., of counsel), for defendant-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

No time need be spent to show that property purchased by the United States with the consent of the state in which it is located is beyond the reach of state or municipal taxation unless the United States consents. U. S. Const. art. 1, § 8. No claim is made that it is. Moreover, property of the United States is expressly made exempt in New York by section 4 of the Tax Law of that state (Consol. Laws N. Y. c. 60).

On December 1, 1919, the property was, however, owned by a private corporation and was then taxable. It is equally clear that under the charter of the city of Buffalo its status as taxable property as of that date was fixed by the acts of the officials of the defendant. But the establishment of its taxable status according to law and the creation of a lien upon the property for any taxes assessed upon it are not the same or equivalent things and do not put into being the same rights and liabilities.

For the purposes of this case, we may assume arguendo that the owner of the property on December 1, 1919, was, when its taxable status became fixed, personally liable for taxes assessed upon it either before or after April 20, 1920, which were for the fiscal year of such taxable status and were due and payable the following July 1st. But that does not necessarily mean that the property itself was liable for such taxes after it had ceased to be the property of that owner. This would depend upon whether the taxing power had any lien or claim for taxes upon the property itself apart from that to which it could be subjected in the event of its ownership by one subject to taxation and liable for the tax at the time payment of the tax could be enforced. When it became the property of another its only liability for unpaid taxes would, of course, be due to some lien against the property itself as of the time the new ownership came into being.

Regardless of what had been done before the government took title April 20, 1920, there was yet to be taken certain vital steps to create such a lien. Section 106 of the defendant's charter, above quoted in part, provides for the publication of a notice by the assessor on the 1st day of June or as soon thereafter as practicable and further provides that all taxes and assessments, together with interest thereon, shall be liens upon the lands upon which they are assessed from the time of the publication of such notice until they are paid. By the defendant's charter, therefore, the publication of this notice was made a condition precedent to the creation of a lien on the property for these taxes. As the notice could not be published until June 1st, there could have been no valid lien on

April 20th when the government took title. Furthermore, the assessment of · December 1, 1919, was but a valuation of the property for purposes of taxation. In re Donner-Hanna Coke Corporation, 212 App. Div. 338, 340, 209 N. Y. S. 62. The assessment for taxation is another distinct step, Matter of Freund, 143 App. Div. 335, 337, 128 N. Y. S. 48; and no lien is created on the property by the act of assessment for valuation, Barlow et al. v. St. Nicholas National Bank, 63 N. Y. 399, 401, 20 Am. Rep. 547; Lathers v. Keogh, 109 N. Y. 583, 17 N. E. 131. See, also, Buckhout v. City of New York, 176 N. Y. 363, 68 N. E. 659. Accordingly, we entertain no doubt that when the United States took title, the property was unincumbered by any lien for taxes.

■ After that date the same immunity from new taxation which made it thereafter exempt protected it from being subjected to any new lien for prior taxes. See United States v. Pierce County (D. C.) 193 F. 529; Bannon v. Burnes et al. (C. C.) 39 F. 892. Some confusion seems to have resulted from the failure to distinguish the difference between the status of property which is exempt from state or municipal taxation solely by reason of the voluntary surrender by state law of the right to tax, and property which is immune from state or municipal taxation because it is owned by the United States. See Ft. Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264. The important reason no such lien could come into being without the consent of the federal government after it took title lies in the fact that taxation of the property of the United States depends wholly upon the will of its owner. Van Brocklin v. Tennessee, 117 U. S. 151, 155, 6 S. Ct. 670, 29 L. Ed. 845. As the whole is inclusive of all its parts, so immunity from taxation which rests upon the sovereign right of the federal government to hold property tax free includes freedom from all taxation not fixed and final as a charge against the property itself when the government acquires it. Since the right here invoked does not rest primarily or necessarily upon state grace, the exemption statute of New York, above cited, and section 54 of the state law, which provides for the exoneration and discharge of certain property from all taxes, assessments, and other charges, need not be considered.

Decree reversed.

L. HAND, Circuit Judge (concurring).

I agree in the result but for other reasons than my brothers. The question appears to me wholly one of state law, with which the sovereignty of the United States has nothing to do, although of course I agree that no state may tax property of the United States. On the other hand I do not understand it to be disputed that when the United States takes over property, it takes it subject to whatever liens are upon it, tax liens like the rest. If the law of a state were that all taxes should be liens as of March first, the time of the assessment, but might be computed, levied and extended on the rolls before July first, I see no reason why they should not be a lien upon land conveyed to the United States on March second. The act of liquidating and formally imposing the tax would not in my judgment be in defeasance of the sovereignty of the United States. I cannot agree with the contrary ruling in U. S. v. Pierce County (D. C.) 193 F. 529. Bannon v. Burnes (C. C.) 39 F. 892, contains a dictum in accord, but it was altogether unnecessary to the result. The levy and extension on the rolls are not adversary proceedings against the United States, like an arrest or seizure of its property; they do no more than fix the amount of a charge already imposed, and the liquidation does not depend upon questions in which the United States is interested except as all other owners of property. They are not directed against it individually, as is a suit, or a condemnation.

By the law of New York the exemption of charitable or ecclesiastical property under section 4 of the Tax Law dates from the completion of the assessment rolls. Association of Colored Orphans v. Mayor, 104 N. Y. 581, 12 N. E. 279; Sisters of St. Francis v. Mayor, 51 Hun, 355, 3 N. Y. S. 433, affirmed on opinion below, 112 N. Y. 677, 20 N. E. 417; In re American Fine Arts Society, 6 App. Div. 496, 39 N. Y. S. 564, affirmed 151 N. Y. 621, 45 N. E. 1131; People ex rel. Barnard College v. Wells, 46 Misc. Rep. 13, 89 N. Y. S. 847, affirmed, 92 App. Div. 622, 87 N. Y. S. 1143; Id., 179 N. Y. 524, 71 N. E. 1136. If that were all, I should be disposed to treat the exemption of the United States under the same section as dating from the same time. However, though with some doubt, I give to section 54 of the state law a wider scope. It came much later in the legislative history of the state and its language at least admits, if it does not require, a construction forbidding the levy, stricti juris, of any tax upon United States property. I read the words distributively "taxes * * * levied" and "assessments or other charges * * *

imposed." "Assessments" means, I think, charges for public improvements which are distributed among the property benefited; it does not refer to the assessment of value for ordinary tax purposes. If so, we are entitled to take the word "levied" as a term of art, especially in dealing with a subject-matter where for long the terminology has been nice and technical. The doctrine easily yields to any contrary legislative expression (American Bible Society v. Commissioners, 142 N. Y. 348, 37 N. E. 116), and there is some antecedent reason to make a distinction between the property of charitable or ecclesiastic bodies, and that of the United States. The first is subject to the general power of the state, and is exempted as matter of grace; the second is without its jurisdiction. There is good ground for avoiding the appearance of any exercise of power over the property of another sovereign, even by means of an earlier reservation which would be lawful, if express. Formally the tax is imposed upon that property, though it involves no executive action, directed against it as such; in such a setting the words of a tax statute may well be taken strictly. Forced to an interpretation without the aid of any decision of the Court of Appeals—which I should take as authoritative—I believe that under section 54 the levy was unlawful, and there certainly was no tax without a levy.