UNION TRUST & SAVINGS BANK, Appellant, v. CITY OF SEDALIA.

In Banc, August 14, 1923.

1. **FISCAL YEAR:** Definition. By "fiscal year" is meant the financial year at the end of which the accounts are balanced, or the year between one annual time of settlement or balancing of accounts and another, and the definition of the words does not indicate a year differing from the calendar year, and there is no reason, unless a different period is expressed in the statute, why the words "fiscal year" used therein should not correspond with calendar year.

2. ———: Indebtedness: Bonds Equal to Half of Current Revenue for Fiscal Year. Section 70 of the Act of 1893, Laws 1893, page

77, declaring that the mayor and council of a city of the third class "shall have power, by ordinance, to issue bonds, payable in one year, to an amount not exceeding half the current revenue for the fiscal year," and Section 12 of Article X of the Constitution, declaring that no city shall be allowed to become indebted "to an amount exceeding in any year the income and revenue provided for such year" without the assent of two-thirds of the voters thereof, should be considered together, and since neither define the words "fiscal year" the said Section 70 should be read in connection with Section 7058, Revised Statutes 1919, declaring that "the word 'year' shall mean a calendar year, unless otherwise expressed," and when all three are considered together the words "fiscal year" used in said Section 70 mean a calendar year beginning on January 1st and ending December 31st, and to give those words any other meaning would be to violate said constitutional provision; and a petition, in an action on bonds issued by a city of the third class upon the authority of said Act of 1893, alleging that the bonds issued "did not exceed one-half of the current revenue of the city of the fiscal year beginning on July 1st and ending June 30th," did not state a cause of action, since in order to be valid the aggregate of said bonds should not have exceeded one-half of the current revenues for the calendar year beginning on January 1st and ending on December 31st.

3. ———: Year as Used in Constitution Means Calendar Year: Validity of Ordinances. The word "year" in Section 12 of Article X of the Constitution, declaring that "no county, city, township, school district . . . shall be allowed to become indebted . . . to an amount exceeding in any year the income and revenue provided for such year" without the assent of two-thirds of the voters thereof, means a calendar year, and has long been so construed in decisions ruling that the words "fiscal year" used in statutes pertaining to counties mean a calendar year, and there is no reason why the same ruling should not be applied to the words "fiscal year" used in statutes relating to cities; and since the word "year" used in said Section 12 means a calendar year, an ordinance or statute which fixes upon a different year as the period for which the revenue of a city is to be ascertained is to that extent invalid.

4. ———: ———: Cities and Counties: In Same Category. As pertaining to their fiscal years the Constitution places cities and counties in the same category. In declaring (Sec. 12, Art. X) that "no county, city . . . shall be allowed to become indebted . . . to an amount exceeding in any one year the income and revenue provided for such year," the Constitution declared that the word

"year," whether used in relevant statutes pertaining to cities or relevant statutes pertaining to counties, means the same period of time, namely, a calendar year, and that the calendar year is to be used as the basis from which to determine the amount of debt that may be contracted by either a city or a county, and a statute that would designate a different year as the period for calculating the amount of current revenue would to that extent be invalid.

Appeal from Pettis Circuit Court.—*Hon. Hopkins B. Shain*, Judge.

Àffirmed.

*Montgomery & Rucker, Lubke & Lubke* and *Leahy, Saunders & Walther* for appellant.

(1) Sec. 8275, R. S. 1919, under authority of which the bonds in suit were issued, authorizes the issuance of bonds "to an amount not exceeding half the current revenue for the fiscal year." (2) The word "year," as used in Sec. 12, Art. X, Constitution of Missouri, means fiscal year. Glasgow v. Rowse, 43 Mo. 479. (3) A fiscal year is the financial year at the end of which accounts are balanced, the year by which accounts are reckoned, or the year between one annual time of settlement or balancing of accounts and another. Black's Law Dict.; Rapalje & Lawrence's Law Dict.; Bouvier's Law Dict.; Funk & Wagnalls' New Standard Dict.; Webster's International Dict. (4) Since the statute does not specifically provide what shall be the fiscal year of a city of the third class, the fiscal year depends upon the time when it is the duty of the city's fiscal officers to balance the books and make their annual report of the city's financial condition and present their estimates of the city's financial needs for the ensuing fiscal year State ex rel. v. Allison, 155 Mo. 325. (5) The fiscal year of a city of the third class at the time of the issue of the bonds in controversy began June 1st and ended June

30th. (a) The treasurer's annual financial report to the city council must be made on or before July 1st, at which time he must report the amount of bonds falling due for which provision must be made and also the amount of interest to be paid during the next fiscal year. Sec. 5830, R. S. 1899; Sec. 8285, R. S. 1919. (b) The city treasurer is the fiscal officer of the city to whom the city collector pays over monthly all moneys received by him. Secs. 5814, 5825, R. S. 1899; Secs. 8269, 8272, R. S. 1919. (c) The mayor is required to make a written report to the council on or before July 1 of each year and to furnish an estimate of the necessary appropriations required to meet the city's wants for the coming year, and an estimate of the probable income for said period. Sec. 5764, R. S. 1899; Sec. 8219, R. S. 1919. Sec. 8275, R. S. 1919, is not violative of, but in harmony with, Sec. 12, Art. X, Constitution. Leavenworth Nat. Bank v. Reilly, 97 Kan. 817; State v. Jennings, 68 S. C. 411; Moose v. State, 49 Ark. 499.

*Paul Barnett* for respondent.

(1) The allegation in the petition that the city had not, during the fiscal year beginning July 1, 1899, and ending June 30, 1900, become indebted in any manner in an amount in excess of the income and revenue provided for said year, was equivalent to an allegation that the city had become indebted in excess of the income and revenue of said city provided for said year, unless the year was calculated upon a fiscal year beginning July 1st, under the maxim *expressio unius est exclusio alterius.* 25 C. J. 220. The doctrine is not confined to the construction of statutes, but is a doctrine of construction of written instruments of general application. Hackett v. Amsden, 56 Vt. 201; Whitehead v. Syndicate, 105 Va. 463. (2) When by an unnecessary allegation, the plaintiff shows he has no cause of action, the defendant may demur. Com. Dig. Pleader, c. 29; Bac. Ab. Pleas, 1, 4; see 2 East, 451; 4 East, 400; Dougl.

667; 2 Bl. Rep. 842; 3 Cranch, 193; 2 Dall, 300; 1 Wash. 257. In Missouri the rule has been adopted that in passing upon the sufficiency of a pleading the court takes into consideration that which is specifically alleged and that which is necessarily implied therefrom. Miller v. Engle, 185 Mo. App. 558; State ex rel. Perkins v. Long, 275 Mo. 169. (3) The word "year" as used in Section 12, of Article 10 of the Missouri Constitution means a year beginning January 1st and ending December 31st. State ex rel. v. Allison, 155 Mo. 325; State ex rel. v. Appleby, 136 Mo. 438; Wilson v. Knox Co., 132 Mo. 387. (4) The Missouri cases holding that the year referred to in the constitutional provision is the calendar year are uniform. All of the decisions were in cases against a county, and it is claimed by appellant that this is a case against a city, and that the statutory provisions governing the fiscal management of a city are different from those governing a county, and that for this reason the decisions of the Supreme Court do not apply. This contention is unfounded, because: (a) The statutory provisions providing for the management of both city and county affairs are enacted without regard to either a fiscal year or a calendar year so far as fiscal transactions are concerned. (b) The Legislature has never provided any fiscal year for the city either by express statute or by implication, but has spread the different annual, biennial and monthly fiscal transactions throughout the calendar without regard to either a calendar or fiscal year. (c) The statutes of Missouri provide that the word "year" shall mean a calendar year unless otherwise expressed. Sec. 7058, R. S. 1919. This statute was in force at the time that the Constitution was adopted in 1875. 2 Wagner's Statutes of 1872, p. 887, sec. 6. The Missouri statutes also provide that the fiscal year of the State shall commence on January 1st and terminate on the 31st day of December in each year, and the books, accounts and reports of the public officers shall be made to conform thereto. Sec. 13295, R. S. 1919. This section

was also in force when the Constitution was adopted in 1875. Laws 1868, p. 178. (d) The reasoning employed by the plaintiff in attempting to establish that a fiscal year, other than the calendar year, was intended by the Missouri Constitution, is the reasoning of the dissenting opinion in the case of the State ex rel. v. Allison, 155 Mo. 325, and therefore such reasoning has been expressly repudiated by the Supreme Court. Every statute which provides for some city fiscal transaction, not based upon a calendar year, has its parallel in a statute governing counties. Therefore any attempts to establish that the Constitution refers to a fiscal year as to cities of the third class, in an attempt to repudiate the decisions of the Supreme Court construing the word "year" in cases against counties.

GRAVES, J.—This is an action upon fifteen bonds issued by the city of Sedalia on July 7, 1899. Plaintiff (appellant) is the alleged owner and holder of these bonds. The bonds are in the denomination of $1000 each, and the petition is therefore in fifteen counts—a count for each bond.

The counts are identical except as to the number of the particular bond mentioned in the different counts. The case passed off upon a demurrer to the petition, and a statement of the contents of these instruments would not be shorter than the pleadings themselves, as counsel have plead with brevity. The first count of the petition reads:

"Plaintiff, for the first cause of action, states:

"1. That the City Council of the said City of Sedalia, acting under the provisions of Section 70 of an Act of the 37th General Assembly of the State of Missouri in regard to cities of the third class, duly approved, April 19, 1893, which said section is now Section 8275, Revised Statutes 1919, did, on June 19, 1899, duly enact an ordinance entitled, 'An Ordinance providing for the issuing of fifteen current revenue bonds of the city of

Sedalia for the year 1899, and providing for the payment thereof,' which said ordinance was duly approved by the mayor-of said city on June 20, 1899, and provided among other things that the mayor and city clerk should sign and execute and attest fifteen bonds of the city of Sedalia, Missouri, of the denomination and par value of $1,000 each, numbered respectively 1 to 15, which bonds should bear interest at the rate of six per cent per annum, payable semi-annually, and should be dated July ———, 1899, and due and payable one year after date and should be payable to ———, or bearer, and that said bonds upon being executed should be sent by the city clerk to the Auditor of the State of Missouri for registration in accordance with the statutes in such cases made and provided, and when properly registered, should be delivered to the city treasurer, who should be charged therewith, and that the city treasurer was authorized to sell said bonds for not less than their face value and that sufficient taxes collected for current revenue for the year 1899 should be set aside by the city treasurer as security for the payment of said bonds.

"2.   That after the enactment and approval of said ordinance of June 19, 1899, and pursuant to the provisions thereof, W. C. Overstreet, the mayor of said city, and John W. Hartshorn, the clerk of said city, duly signed and executed a certain bond of said city, dated July 7, 1899 (a duly verified copy of which is herewith filed), numbered 1, wherein the said city, the defendant herein, under the hand of its said mayor and city clerk, and attested by its corporate seal, promised to pay to ——— or bearer, at the counter of the Merchant's Laclede National Bank of the City of St. Louis, State of Missouri, the sum of $1,000, together with interest at the rate of six per cent per annum, the principal to be payable at the end of one year and the interest in equal installments at the end of six and twelve months from the date thereof on presentation of the coupons thereto attached.   That said bond further recited that it is issued

under and in pursuance of Section 70 of an Act of the 37th General Assembly of the State of Missouri, of 1893, entitled, 'An Act to Repeal Article IV of Chapter 30 of the Revised Statutes of Missouri, 1889, with All Amendments thereof, Said Article being entitled, "Cities of the Third Class," and to Enact in Lieu thereof a New Article Providing for the Government of Cities of the Third Class,' approved April 19, 1893, for the purpose of anticipating a portion of the current revenue for the fiscal year 1899; and that this bond is one of fifteen bonds of the denomination and par value of $1,000 each, numbering from 1 to 15, this being No. 1; and that the aggregate of said fifteen bonds did not exceed in amount one-half of said revenues and that its payment is secured by an ordinance directing that there be set apart out of the revenue of the city for the year 1899, a sum sufficient to pay the principal and interest thereof.

"3. That the said bond was duly sent by the city clerk of said city to the Auditor of the State of Missouri, and that his certificate of registration under his hand and seal of his office was attached and appended to said bond and that said bond and its said certificate are hereto attached and made a part of this petition as fully as though set out in full in this petition.

"4. That the said bond was duly delivered to the city treasurer of the said city of Sedalia, who was duly charged therewith, and that the said city treasurer, acting under the provisions of the said ordinance of June 19, 1899, did, on July 30, 1899, sell said bond for not less than its face value, and it received the purchase money thereof and did deliver the said bond to the buyer, and that the said purchase money was duly received by the said city of Sedalia.

"5. That at the time of the sale and delivery of the said bond and of the receipt of the purchase money, the said city of Sedalia had not, during the fiscal year beginning July 1, 1899, and ending June 30, 1900, become indebted in any manner or for any purpose, in-

cluding said bond issue of $15,000, in an amount in excess of the income and revenue of the said city provided for the said year.

"6. That the amount of the said bond issue of $15,000 added to the amount of all bonds of the said city issued or sold prior thereto during the fiscal year beginning July 1, 1899, did not exceed one-half of the current revenue of the said city for the said fiscal year, and that said bond No. 1 recites upon its face that the aggregate of said fifteen bonds does not exceed in amount one-half of said revenue.

"7. That the interest was paid upon the said bond at the rate of six per cent per annum until July 7, 1907, and that on the 7th days of January and July in each succeeding year thereafter until January 2, 1912, payments were made on account of the said interest on the said bond of $20 each, but that the balance of said interest, together with the principal of said bond, is now due and payable.

"8. That the plaintiff is the owner and holder of the said bond, and that the same is now due, owing and unpaid. That payment thereof has been duly demanded and that the defendant has failed and neglected to pay the same.

"Wherefore, the plaintiff prays judgment for the sum of $1,000, together with the interest remaining due and unpaid upon the said bond as aforesaid, and for costs."

To this count was attached a verified and sworn copy of bond No. 1. Recitals in the bond may have to be reverted to in the course of the opinion, but need not be set out in full.

The demurrer to the petition is as follows:

"Defendant demurs to plaintiff's petition, and every count thereof, for the following reasons:

"1. Because it is alleged in paragraph five of every count of the petition that at the time of the sale and delivery of the said bonds and of the receipt of the pur-

chase money, the city of Sedalia had not, during the fiscal year beginning July 1, 1899, and ending June 30, 1900, become indebted in any manner or for any purpose, including said bond issue of $15,000, in an amount in excess of the income and revenue of the said city provided for the said year.

"2. Because in paragraph six of every count of the petition it is alleged that the amount of said bond issue, added to the amount of all bonds of the city issued or sold prior thereto, during the fiscal year beginning July 1, 1899, did not exceed half of the current revenue of said city for the said fiscal year.

"3. Because it is nowhere alleged in any count of the petition that the city of Sedalia had not, during the year in which the bonds were authorized, nor during the year in which the bonds were sold and delivered, become indebted in an amount in excess of the income and revenue of the city provided for the said year.

"4. Because it is nowhere alleged in any count of the petition that the city had not issued or sold bonds prior to the bond issue in suit, which, together with the bond issue in suit, exceeded half of the current revenue of the city for the year in which the bonds were authorized or in which they were delivered and sold.

"5. Because the city of Sedalia is a municipal corporation and has no authority to issue bonds, except upon certain conditions prescribed by the Constitution of Missouri and the acts of the Missouri Legislature in force at the time that the bond issue was authorized and at the time that the bonds were delivered and sold.

"6. Because Section 12 of Article X of the Missouri Constitution, which was adopted in 1875, provides that no county, city, town, township, school district or other political corporation or subdivision of the State shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in that year the income and revenue provided for such year, without the assent of two-thirds of the voters.

"7. Because the year mentioned in the above-mentioned constitutional provision means a year beginning January 1, and not July 1, of each year.

"8. Because the fiscal year mentioned in the Act of 1893, which is now Section 8275, Revised Statutes 1919, under which the bonds in question were issued and which provides that the mayor and counsel shall have power to issue bonds to an amount not exceeding one-half of the current revenue for the fiscal year, is a fiscal year of the city of Sedalia beginning January 1.

"9. Because the burden is upon the plaintiff to plead and prove that the bonds were lawfully issued."

This demurrer was sustained by the court, and plaintiff having refused to plead further, and having elected to stand upon its said petition, the usual judgment against plaintiff and for defendant was entered. From such judgment this appeal was taken by the plaintiff.

In a preliminary statement in the petition it is alleged that plaintiff is a corporation under the laws of the State of Illinois, and that the defendant (city of Sedalia) "is a municipal corporation known under the statutes of the State of Missouri as a city of the third class."

Learned counsel for appellant say that the real questions involved in the case are those raised by paragraphs 6, 7, and 8 of the demurrer, supra. Those questions they say are three in number, viz:

"1. What is a fiscal year?

"2. What sort of a year is referred to in the constitutional phrase, 'exceeding in any year the income and revenue provided for such year?'

"3. If a fiscal year is meant, then what was the fiscal year of a city of the third class at the time of the issuance of these bonds?"

Such is an outline of the case.

I. It is clear that the pleader was undertaking to plead the authority and right of the city to issue the bonds. He was not leaving it in such shape as to allow

the questions to be raised by answer.  He pleads the
**Demurrable Petition.** statute giving the right to issue bonds as against the current year's revenues.  He pleads the ordinance authorizing the issue of the bonds, and the issuance thereof.  He pleads that the bonds recite upon their face that they were issued under Section 70 of an Act of the 37th General Assembly, relative to the issuance of bonds anticipating a year's current revenue, and then pleads that the year which the city of Sedalia had in mind was a year beginning on July 1st and ending upon June 30th following.  He further avers that during this named year (July 1st to June 30th following) the said bonds so authorized by ordinance did not exceed one-half of the current revenue of the city.  In other words there is taken this particular period of twelve months for the one in which to establish the fact that the bonds were not in excess of one-half of the current revenue.  What would have been the status if the year had run from January 1, 1899, to December 31, 1899, is not indicated by the petition.  If the petition does not state a cause of action because of the fact that no such year, as the one pleaded, has a legal existence, for the purpose of issuing current revenue bonds, then it is bad, and the judgment on the demurrer was right.  This because the city selected the twelve months covered by the transaction here in question, and no other period of twelve months is urged in the petition. So that the questions suggested by appellant and quoted, supra, are the live questions in the case.  Of these in their order.

II.   Section 70 of the Act of the 37th General Assembly   (Laws 1893, p. 77) pleaded in the petition and mentioned in the bonds, so far as applicable reads:

"The mayor and council shall also have the power, by ordinance, to issue bonds, payable in one year, to an amount not exceeding half the current revenue for the *fiscal year,* and also to issue bonds in renewal of

other bonds of the city maturing for the requisite amount,
and which the city has no fund to pay: Pro-
vided, however, that such renewal bonds shall
not bear any greater rate of interest than did the original
bonds, and shall not run for a longer time than ten years.''

*Fiscal Year.*

We have italicized the words ''fiscal year'' above,
because around these hover all the troubles in the case.
The statute must be read in the light of Section 12 of
Article X of the Constitution, if such provision of the
Constitution limits the meaning of the words in this stat-
ute of 1893, which is now Section 8275, Revised Statutes
1919. The applicable portion of the constitutional pro-
vision reads:

''No county, city, town, township, school district or
other political corporation or subdivision of the State
shall be allowed to become indebted in any manner or for
any purpose to an amount exceeding in any year the
income and revenue provided for such year, without the
assent of two-thirds of the voters thereof voting at an
election to be held for that purpose.''

It will be noted that the words used are ''exceeding
in any year the income and revenue provided for such
year.'' The Constitution says nothing about a ''fiscal
year.'' The words used, and especially the latter words
in the question last above, indicate what might be termed
a ''revenue year,'' or a ''debt-creating year.'' The limi-
tation is that the city cannot become indebted in any
year in excess of the income and revenues provided for
such year. Does this mean a calendar year, or will it
permit a ''fiscal year'' to be established which would
cover a different twelve months?

The qualifying word ''fiscal'' is the thing upon which
appellant hangs its hopes. Law writers and lexicogra-
phers, have thus defined the word:

In Black's Law Dictionary, fiscal is defined as ''re-
lating to the fisc or public treasury; relating to accounts
or to the management of revenue.''

In Rapalje & Lawrence's Law Dictionary it is defined as "belonging to the exchequer, revenue or public treasury."

Bouvier's Law Dictionary defines it as "belonging to the fisc or public treasury."

The term fiscal year is defined by the leading lexicographers as follows:

Funk & Wagnall's New Standard Dictionary defines the term fiscal year as "the financial year at the end of which the accounts are balanced."

Webster's International Dictionary defines fiscal year as "the year by or for which accounts are reckoned, or the year between one annual time of settlement or balancing of accounts, and another."

The Constitution says nothing about a "fiscal year." It simply uses the term "year." As to counties the word "year" as found in Section 12 of Article 10, Mo. Constitution, which we have quoted, supra, has been held to mean a calendar year, or a year beginning January 1st and ending December 31st. [Wilson v. Knox County, 132 Mo. 387; State ex rel. v. Appleby, 136 Mo. 438; State ex rel. v. Allison, 155 Mo. 335.]

The Wilson Case was the united opinion of our Court in Banc. No diverse opinion appeared until the Allison Case, 155 Mo. l. c. 335, wherein GANTT, C. J., and BURGESS, J., dissented—GANTT, C. J., in an opinion filed. The majority opinion followed the Wilson Case, supra, in which opinion, GANTT and BURGESS, JJ., then concurred. They departed from the rule, however, in the Allison Case, supra. So, that up to this date the word "year" in said Section 12 of Article 10 of the Constitution means a calendar year, so far as counties are concerned. Why not as to cities? But this question, and the alleged distinction between counties and cities, later.

III. The constitutional provision, supra, covers both counties and cities. If the word "year" as therein used means a calendar year as to counties, why should

it mean a different thing as to cities? As to both it refers to and limits the debt-making power during the period of twelve months. The particular twelve months, we say, as to counties, is the twelve months beginning January 1st and ending December 31st. Not only so, but we have so said, where the matters at issue were the fiscal transactions of the counties. The fiscal year of the county by our ruling has been established as a calendar year. We can see no reason for a different rule as to cities, in that cities are placed in the same category in the constitutional provision. Our statute relative to the meaning of words (Sec. 7058, R. S. 1919) says: "The construction of all statutes of this State shall be by the following additional rules, unless such construction be plainly repugnant to the intent of the Legislature, or the context of the same statute: . . . third, the word 'month' shall mean a calendar month, and the word 'year' shall mean a calendar year, unless otherwise expressed." This statutory rule may have no application as to the word "year" in the Constitution, because the statute (Section 7058, supra) is made applicable to statutes. It does have application to Section 70 of the Act of 1893 (Laws 1893, p. 77) because the word "year" is used therein. This is the original law by which cities of the third class were authorized to anticipate and use their annual revenue in advance of its actual collection, by the issuance of current revenue bonds. Under the rule made by Section 7058, supra, the word "year" in the Act of 1893, would mean a calendar year, "unless otherwise expressed" in the said Act of 1893. It is not specifically or "otherwise expressed" unless it can be said that the qualifying word "fiscal" amounts to an otherwise expression. We have given above the several definitions of the term "fiscal year," and these definitions do not indicate that such a year should differ from the calendar year. Accounts can be balanced as well on December 31st as upon June 30th. So, too, settlements

<div style="margin-left: note;">Fiscal Year Means Calendar Year.</div>

can be made as well upon the one date as the other. There is no real reason why the so-called "fiscal year" should not correspond with the calendar year. It is at least safe to say that if we follow the rule given in Section 7058, supra, in the construction of Section 70 of the Act of 1893, we cannot say that it is therein so "otherwise expressed," as to allow us to say that the year intended by the said Act of 1893, was other than a calendar year. The use of the word "fiscal" does not suffice to change the situation.

IV. As stated, supra, the Constitution does not specifically prohibit the fixing of a fiscal year different from the calendar year. The Constitution (Sec. 12, art. 10) uses the words "any year" followed by the words "for such year." It applies not only to counties, but to cities, towns, townships, school districts Constitutional and other political corporations and sub-Year Means divisions of the State. It has reference to Calendar Year. the debt-creating power of such bodies, and is a limitation upon the power to contract debts. It mentions in connection with this limitation the word "year" as the unit of time to be considered. This unit of time in this connection, we have ruled, as to counties, to be a calendar year. And as said, if it has that meaning as to counties, we see no reason why it should not have that meaning as to cities. The purpose was to fix a period to be considered in determining the power to create a debt without the vote of the people. If by the use of the word "year" in the constitutional provision is meant a calendar year, as we have ruled in county cases, and if the same meaning should be given it as to cities, as we think it should, then there could not be a different year considered or even fixed by statute, in the matter of creating debts. In other words, if the Constitution fixes the calendar year as the basis for determining the right and power to contract debts, then a statutory provision for a fiscal year different from the

calendar year, if made to apply to the issuance of bonds or the contracting of debts, would be violative of the constitutional provision, and of course void. So, when we have said that the word "year" in the constitutional provision as to the right to contract debts, or issue bonds, means a calendar year, then any law or ordinance undertaking to fix a different year, would be beyond the Constitution and violative thereof. Under our construction of the meaning of the word "year" in county matters, the Legislature could not make anything but the calendar year, the basis upon which to consider the right to issue bonds, or contract debts. Then if the cities fall within the same constitutional category as the counties, a like situation exists as to the cities. We therefore rule the only period which can be considered (under the constitutional limitation upon the right to incur debts) is the calendar year, and the city of Sedalia could not by ordinance, or otherwise, fix a different period of time as the basis for a bond issue.

V. Appellant urges as a reason for sustaining the issuance of the bonds in question, that the cities do not fall within the same category as the counties. It suffices to say that the Constitution so places them.

Cities and Counties in Same Category.

Learned counsel call attention to the many statutes and provisions on the revenues of the cities—the assessment, the collection, the disbursement, the care and custody of the funds—and try to point out differences as between counties and cities. This is what Judge GANTT pointed out as to counties in his dissent in Allison's Case, supra. He of course was discussing his conceived difference between the rule which he then thought right to be applied to counties, as distinguished from the state rule, as fixed by statute. [R. S. 1919, sec. 13295.] This statute fixed the state fiscal year the same as a calendar year.

In this case, when we come to compare the sundry provisions applying to counties and to cities, we find singular co-incidents, which indicate that the calendar year can' be applied to cities, without any greater inconveniences, than result from its application to counties. Thus, the city officers take office in April, whilst the county assessor takes office in June and the collector in March. See Revised Statutes 1919, Sections 12761 and 12894, as to the two county officers, and Section 8208, as to city officers. The city council receives proposals from banks for the deposits of city funds in July, whilst the counties attend to this at the May term of the county court. In fact there are a great number of provisions as to cities, and their revenues, which have their counterparts in the provisions as to counties. Another instance is that the taxes in both cases become delinquent at the same time. Most of these matters in both instances occur after the beginning of the calendar year. So, in our judgment these things so earnestly pressed by counsel, and so earnestly pressed by GANTT, J., in Allison's Case, supra, furnish no reason for saying that there can be, or should be, a difference between counties and cities under the limitations prescribed by Section 12 of Article 10 of the Constitution. This provision fixes (according to our construction of the word ''year'' as used therein) the calendar year as the basis from which to determine the amount of debt which may be contracted for that year. That basis must be taken both by counties and cities for the purpose indicated. To take another year as a basis violates the constitutional provision. Such other year, whether selected by statute or otherwise, is a year which is unlawful, and cannot be considered. In the case at bar the petition shows the issuance of bonds (the creation of a debt) without taking the conditions of the calendar year as the basis for the right to act. It pleads a year not recognized by the organic law, and as it is not even urged that such portion of the

petition is surplusage, it follows that the demurrer was well taken.

The judgment of the circuit court is affirmed. *James T. Blair, David E. Blair, Ragland* and *Walker, JJ.,* concur; *Woodson, C. J.,* dissents; *White, J.,* not sitting.