Louis E. Dennig, Alex Bischoff, Walter W. Krenning, Louis S. Dennig, Henry Bischoff, Jr., Harry S. Bischoff, Harry C. Henger, Andrew J. Haverstick and Edward G. Bischoff, as the President and Last Board of Directors of St. Louis Independent Liquidating Company, a Dissolved Corporation, Appellants, v. Swift & Company, a Corporation, St. Louis Independent Packing Company, a Corporation, Missouri Butterine Company, a Corporation, and Waldeck Packing Company, a Corporation.—98 S. W. (2d) 659.

Division One, November 12, 1936.

*Gustave A. Stamm* and *Maurice L. Stewart* for appellants.

*R. E. Fisher* and *Fordyce, White, Mayne & Williams* for respondents.

COLLET, J.—On July 31, 1931, a written contract was executed between the St. Louis Independent Packing Company and Swift & Company providing for the sale of certain real and personal property by the St. Louis Independent Packing Company to Swift & Company. Certain arrangements were made subsequent to the execution of this contract involving the creation of other corporate entities to facilitate the transfer of the properties involved in the sale. Since those arrangements have no bearing on this controversy we will treat the transaction as one between the St. Louis Independent Packing Company and Swift & Company. The former will be referred to as the packing company.

The contract contained the following provision:

"Seller shall furnish to Buyer . . . certificates of title . . . to all of the real property situated in the City of St. Louis, Missouri, showing good and merchantable fee simple title thereto of record in Seller on the latest possible date prior to the date of said certificates . . . free from all liens and encumbrances excepting . . . general taxes *payable for the year 1931* and thereafter. Said general taxes *payable for the year 1931* for the real and personal property to be purchased hereunder shall be prorated between the parties hereto as of the date of delivery of the deeds and other instruments as hereinafter specified." (Italics ours.)

The deeds referred to in the contract were dated August 18, 1931. (The date of the deed was assumed in the calculations of the parties to be August 15, 1931.) Swift & Company went into possession of the property August 15, 1931, and paid the agreed purchase price less $27,960.36 representing the amount of taxes which Swift & Company contended the packing company was liable for under the provision of the contract set out above. The amount withheld consists of all the taxes payable (and later paid) in December, 1931, amounting to $23,082.07 on real estate and $57.72 personal property, and also $4819.94 representing the taxes for two and one-half months from June 1, 1931, to August 15, 1931.

The packing company contended that the contract, properly construed, required it to pay seven and one-half twelfths of the taxes, assessed June 1, 1930, and payable in the calendar year 1931, and the purchaser four and one-half twelfths of those taxes.

The application of the packing company's theory would result in its liability for taxes being limited to $14,484.41 instead of $27,-960.36 as claimed by Swift & Company. The payment of the difference of $13,475.95 being refused, the packing company brought this action for its recovery. A jury was waived and the cause tried before the court. At the trial the deed referred to in the contract was admitted in evidence. The deed contained a provision relating to taxes substantially similar to the terms of the contract. There is no con-

tention that the deed modified or changed the contract or that it should be controlling.

During the progress of the trial plaintiff offered evidence showing that the custom in St. Louis was to divide the taxes payable in the year of sale between the vendor and vendee in proportion to the extent of the portion of the year each owned the property. The court admitted this evidence subject to objection, indicating however that it would be excluded later. No further ruling relative to it appears. The defendant Swift & Company sought to prove that the question of what taxes were to be paid by each of the parties was discussed by representatives of the parties in the negotiations immediately preceding and incident to the drafting and execution of the contract, that "the custom of prorating taxes on the calendar year" was brought up by plaintiff's counsel who offered a "rider" to the proposed draft of the contract changing the words "taxes payable for the year 1931" to read "taxes payable in the year 1931," but that the rider was rejected by defendant. This evidence was excluded, offer of proof was made and refused by the court. At the conclusion of the evidence the court gave defendant's declaration of law in the nature of a demurrer and entered judgment for defendant. From that judgment plaintiff appeals.

The defendant, respondent here, states its position as follows:

"Respondents contend and believe that the words 'the year 1931,' which appear in the contract, have reference to the calendar year 1931. Respondents do not contend, and have never contended (as the appellants mistakenly assert), that this language has reference to the 'fiscal year 1931,' but, on the contrary, respondents contend that there is, independent of the contract, a fiscal year for purposes of property taxation from June 1, 1930, to June 1, 1931, and also a fiscal year from June 1, 1931, to June 1, 1932. The taxes payable for the fiscal year June 1, 1930, to June 1, 1931, are payable *in* December, 1931, but although payable in 1931, these taxes are *not* the entire '*taxes for the calendar year 1931.*' The taxes payable for the calendar year 1931 are the taxes for the last portion of the fiscal year ending June 1, 1931, and the first seven months of the following fiscal year.

"The year 1931 covered a portion of two tax periods. The seller, by the terms of the contract, agreed to pay the taxes which were actually payable under the law for the period during which the seller held the property, and, since the seller held the property up to August 15, 1931 (and, therefore, held the property for the entire period of the fiscal year from June 1, 1930, to June 1, 1931), the sellers were obligated to pay the taxes for that period, which taxes were payable in December, 1931, and since the seller also held the property for the first two and one-half months namely, June 1st to August 15th, of the fiscal year from June 1, 1931, to June 1, 1932, they were likewise

bound to pay two and one-half twelfths of the taxes payable in December, 1932."

Appellant contends that the taxes assessed as of June 1, 1930, are taxes for the calendar year beginning January 1, 1931, payable in the year 1931, and hence the provision of the contract requiring a clear title except taxes payable for the year 1931, and the further provision of the contract providing for the prorating of those taxes, makes appellant liable for only seven and one-half twelfths of the taxes payable in 1931 and creates no responsibility for the payment by appellant of any part of the taxes assessed as of the date of June 1, 1931, and payable in 1932.

Our tax system has been the source of some confusion in the past as well as in the present case. Much of that confusion grows out of an effort to determine when the lien of the tax attaches under the provisions of the statute in the absence of any express agreement. We are not concerned with the latter question in this case since the parties have, by the terms of the contract, fixed their respective obligations relative to the payment of taxes and submit the contract for interpretation. Under these circumstances our sole problem is to construe the agreement contained in the contract.

By Section 11, Title IV, Chapter 10 of the General Statutes of Missouri, 1865, the fiscal year of the State was fixed as commencing on the first day of October and ending on the thirtieth day of September. By amendment of that section in 1868 the fiscal year of the State was fixed as commencing on the first day of January and terminating on the thirty-first day of December (Laws 1868, p. 178). The same rule applies now. [Sec. 11398, R. S. 1929.]

The statutory rules of construction applicable to the construction of statutes are in part as follows:

"The construction of all statutes of this State shall be by the following additional rules, unless such construction be plainly repugnant to the intent of the Legislature, or of the context of the same statute; . . . the word 'year' shall mean a calendar year, unless otherwise expressed, and the word year be equivalent to the words 'year of our Lord.' . . ."

The fiscal year covers the same period as the calendar year. [Wilson v. Knox County, 132 Mo. l. c. 399, 34 S. W. 45, 47; State ex rel. v. Appleby, 136 Mo. l. c. 408, 37 S. W. 1122; State ex rel. v. Allison, 155 Mo. 325, 56 S. W. 467; Union Trust & Savings Bank v. City of Sedalia, 300 Mo. 399, 254 S. W. 28.]

In State ex rel. Flaugh v. Jaudon, 286 Mo. 181, l. c. 192, 227 S. W. 48, this court en banc, after referring to the system of assessing taxes in this State, said:

"So that, in each year from June 1st to the following January 1st, there must be listed and assessed all real estate, and it might be added

all personal property, but such is not here involved. This assessment so made *forms the basis for the State and county taxes of the next year, or the year beginning with the January 1st, upon which the assessment by the assessor is presumed to close.*" (Italics ours.)

In State ex rel. v. Carr, 178 Mo. 229, 77 S. W. 543, this court en banc had before it the question of whether an action to recover taxes for certain years was barred by the Statute of Limitations. We note that the court referred to the taxes which became delinquent January 1, 1894 as "the taxes for 1893." The taxes so referred to were of course taxes payable in 1893 and were based upon the assessment made as of June 1, 1892. [See Sec. 7531, R. S. 1889, Amended Laws 1893, p. 216.]

In Brinkerhoff-Faris Trust & Savings Co. v. Hill, 328 Mo. 836, l. c. 843, 42 S. W. (2d) 23, this court referred to the taxes which were based upon the assessment made as of June 1, 1926 as "taxes assessed and levied for the year 1927."

It seems reasonably clear that the "tax year" or "taxable year" as it is sometimes referred to, is a calendar year. It is equally evident that the words "taxes for the year 1931" mean taxes based upon the assessment made as of June 1, 1930, and payable in 1931. We so hold. The incorporation of the word "payable" in the above-quoted clause after the word "taxes" produces grammatical inaccuracy but does not make the meaning uncertain. Taxes cannot with grammatical exactness be said to be "payable for" the year 1931. They are either payable in the year 1931 or are taxes for the year 1931. But since taxes for the year 1931 are the same taxes as those "payable in" that year, there is no uncertainty as to the meaning of the words "taxes payable for the year 1931."

The case of Blossom v. Van Court, 34 Mo. 390, and McLaren v. Sheble, 45 Mo. 130, which respondent cites as announcing a rule contrary to the conclusion expressed above, are different from the case at bar. In each of those cases there was only a general covenant of warranty in the deed of conveyance and no agreement specifying what tax liens the title should be free from, leaving to the court the determination of the question of what liens had attached at the date of the conveyance, while in this case the parties agree that the title shall be free of all liens except those "for taxes payable for the year 1931," thereby leaving for judicial determination only the question of what taxes are referred to by the use of the language quoted.

The case of Glasgow v. Rowse, 43 Mo. 479, also cited by respondent, involved the propriety of the State Auditor's action in designating a fiscal year (for the assessment and collection of income taxes) which was different from the statutory fiscal year. There is nothing in that case which is inconsistent with the views herein expressed.

The case of McManus v. Shoe & Clothing Co., 60 Mo. App. 216, is cited in support of the theory that the fiscal "tax year" begins on June 1st and ends the following May 31st. That case is not authority for the construction of our revenue statutes for the reason that the opinion was based upon a stipulation of the parties that the taxes in dispute were "for the fiscal year beginning June 1, 1891, and ending on May 31, 1892."

The opinion of the St. Louis Court of Appeals in the case of De-Giverville v. Legg, 48 Mo. App. 573, clearly holds that the revenue act recognizes a fiscal year beginning June 1st and ending May 31st. The opinion relies upon McLaren v. Sheble, Blossom v. Van Court and Glasgow v. Rowse, supra. An examination of the three latter cases discloses that neither of them recognized a fiscal year different from the then existing statutory fiscal year. Blossom v. Van Court and McLaren v. Sheble, as indicated by our previous reference to those cases, turned on the question of when the lien of the tax attached. Glasgow v. Rowse, also hereinbefore referred to, held in effect that the State Auditor should have adopted the same period or "year" for the assessment of the then newly created income tax as was used in the assessment for general taxes, and did not definitely state what that year was. None of the cases relied upon in DeGiverville v. Legg supported the conclusion that a different fiscal year should be adopted in administering the revenue act than was prescribed as the fiscal year by general statute. But even if DeGiverville v. Legg had not been based upon an erroneous conception of the effect of the cases relied upon, the conclusion in that case is in direct conflict with the later cases of Wilson v. Knox County, State ex rel. v. Appleby, State ex rel. v. Allison, and Union Trust & Savings Bank v. City of Sedalia, supra, and hence was overruled by the latter cases.

Although much of our general revenue act, by express provision contained therein, does not apply to the city of St. Louis, no reason is suggested why a different construction should be placed upon language appearing in a contract or conveyance of the character involved here when it relates to real estate situate in the city of St. Louis and when it may involve real estate located elsewhere in the State, and we perceive no grounds for recognizing such a distinction.

The judgment should be reversed and remanded with directions to the trial court to enter judgment for plaintiff for the amount sued for and costs. It is so ordered. All concur.