29 F.Supp. 92 (1939)
UNITED STATES
v.
CERTAIN LAND IN CITY OF ST. LOUIS, MO., et al.
No. 12297.
District Court, E. D. Missouri, E. D.
September 7, 1939.
*93 Harry C. Blanton, U. S. Dist. Atty., and A. T. Welborn, Sp. Asst. to Dist. Atty., both of St. Louis, Mo., and L. E. Jones, Asst. Atty. Gen.
Douglas H. Jones, Paul Bakewell, Jr., Henry H. Furth and Byron F. Babbitt, Sullivan, Reeder, Finley & Gaines, J. B. Steiner, Salkey & Jones, Polk & Williams, Max Haas, George Eigel, and Oscar E. Buder, all of St. Louis, Mo., for defendants.
Thompson Mitchell, Thompson & Young and Wm. R. Bascom, all of St. Louis, Mo., amicus curiae.
Drake Watson, Asst. Atty. Gen., for the State of Missouri.
Donald Gunn, of St. Louis, Mo., for Collector Wm. F. Baumann of the City of St. Louis, Mo., intervener.
COLLET, District Judge.
In this and a number of other cases of a similar character, the Government has condemned the lands of the defendants lying within the city limits of the City of St. Louis, Missouri, under authority of Acts of Congress for the purpose of acquiring the site for the Jefferson National Expansion Memorial. Many questions preliminary to actual acquisition by the Government have been considered and disposed of. Barnidge v. United States, 8 Cir., 101 F.2d 295. On June 16, 1939, the Government paid into the registry of this Court the amount which, in the opinion of the Secretary of the Interior, was the reasonable value of the real estate involved and on that date obtained a judgment vesting in the Government the fee simple title to the property and obtained an order directing the occupants thereof to vacate the property within sixty days. 40 U.S.C.A. § 258a.
In all of the cases Commissioners have been appointed and have made reports fixing the value of the property taken. In each of these cases the Government has filed exceptions to the Commissioners' awards. In a number of them the property owners have also excepted to the awards. Those exceptions have not been *94 tried. In a number of cases the Government and the land owners have agreed upon a fair value and final judgments fixing the fair value have been entered. In a number of cases including some of those in which final judgments as to the value have been entered and including some in which no agreements have been reached and in which exceptions are still undisposed of, motions have been filed by property owners requesting the distribution to them of the amount paid into Court. This was in response to an announcement by the Court that such motions would be considered. A large number of these motions have been heard and partial distribution has been ordered and made to the proper parties in interest.
In all cases the City of St. Louis has filed a claim for distribution to it out of the funds in the registry of this Court for city, state and school taxes. That claim includes in many instances delinquent taxes, i. e., taxes due and payable in the year 1938 and prior years. In all instances the claim includes a request for the payment to the City of taxes for the years 1939 and 1940. In all instances where partial distribution has been ordered, a sufficient portion of the monies deposited for the acquisition of each tract has been retained in the registry of the Court to cover all of these taxes claimed by the City. In each instance the adjudication of the City's right to payment out of the funds on deposit has been reserved. It is the purpose of the present memoranda to dispose of that legal question in all cases pending in this Court, hence the cases will be referred to generally without reference to any individual case or defendant. The legal question is identical in all the cases.
Three general questions are presented. They may be stated in the language of counsel for the City as follows:
1. When do delinquent taxes against property in this area cease to draw the interest and penalty provided for by the general revenue laws of the State of Missouri?
2. Was the property in question liable for taxes for the calendar year 1939 and if not for all of said year for what portion thereof? Does that liability extend to the money now on hand in the registry of the Court?
3. Is the property in question liable for taxes for the calendar year 1940 and does that liability extend to the money now on hand in the registry of the Court?
Necessarily, the determination of these questions involves a consideration of the Missouri Statutes relative to taxation and the construction thereof by the Missouri Courts. But, first, the issue may be somewhat narrowed. It seems to be conceded, as well it might, that the fund on deposit in the Registry of the Court stands in the place of the real estate condemned and is subject to the claim of all lienholders for the payment of the amount of their lien which had attached to the real estate at the time of the appropriation of the property by the Government. Thompson v. Chicago, S. F. & C. Ry. Co., 110 Mo. 147, 19 S.W. 77; Ross v. Kendall, 183 Mo. 338, 81 S.W. 1107; Buchanan v. Kansas City, 208 Mo. 674, 106 S.W. 531, 15 L. R.A.,N.S., 834; Municipal Securities Co. v. Kansas City, 195 Mo.App. 464, 193 S. W. 880. It is, therefore, of paramount importance to determine when the lien of the taxes attach to the real estate condemned. Therefore, the first question presented, as stated above, will be laid aside for the present.
Were the taxes for the year 1939 a lien upon the property on the date the Government took title to it and paid the estimated fair value of the property into Court  that date being June 16, 1939?
Section 9747, R.S.Mo.1929, Mo.St.Ann. § 9747, p. 7868, imposes upon all real property a lien in favor of the state for all taxes thereon, that lien to continue in force until all taxes, forfeitures, back taxes and costs have been fully paid or the land sold or released but it does not fix the time when the lien shall attach: "§ 9747. * * * real property shall in all cases be liable for the taxes thereon, and a lien is hereby vested in favor of the state in all real property for all taxes thereon, which lien shall be enforced as hereinafter provided in this chapter; said lien shall continue and be in force until all taxes, forfeitures, back taxes and costs shall be fully paid or the land sold or released, as provided in this chapter."
Section 9746, R.S.Mo.1929, Mo.St.Ann. § 9746, p. 7867, imposes upon the person owning real property on June 1st, the obligation to pay the taxes on that property: "§ 9746. Every person owning or holding property on the first day of June, including all such property purchased on that *95 day, shall be liable for taxes thereon for the ensuing year."
Many Missouri cases deal with the question of whether the purchaser or the seller of real estate shall pay the taxes as between themselves. But that question involves a personal responsibility as between the former owner and the purchaser which must not be confused with the question involved here.
Blossom v. Van Court, 34 Mo. 390, 86 Am.Dec. 114, and McLaren v. Sheble, 45 Mo. 130, are cited in support of the argument that the lien of the taxes attaches as of the date of the assessment. In each of those cases, the question at issue was the responsibility for the payment of the taxes as between the seller and purchaser. The Court determined that question by a determination of when the lien attached and reached the conclusion that the lien attached as of the date of the assessment. At the time each of those cases was determined the Statute Law was somewhat different than now. The Statute imposing the lien was as follows (section I, article 5, R.S.Mo.1835, page 541): "All taxes laid upon lands and town lots, whether for state or county purposes, and all penalties and interest imposed or charged for the nonpayment of taxes, shall be liens upon the lands charged therewith, until payment or forfeiture, notwithstanding any change of title, by deed, judgment or otherwise."
Its predecessor statute more definitely fixed the meaning of the term "laid". It is as follows (Territorial Laws, 1804-24, section 17, chapter 299, page 735): "There shall be a perpetual lien on all lands, houses and lots made taxable or subject to taxation by this Act, for the payment of taxes, and the arrearages of taxes, which shall be assessed, or which ought to have been assessed thereon; and no sale or transfer thereof shall in any manner affect the lien on the lands, houses and lots as aforesaid."
It is obvious from a reference to these two ancient statutes that the lien of the taxes was understood to attach to all property which had been assessed or to all property upon which taxes had been "laid". The present statute relative to the lien (Section 9747, supra) makes no such provision. Hence, the cases referred to do not determine the present question.
The case of State ex rel. and to Use of Waddell v. Johnson, 316 Mo. 21, 296 S. W. 806, is cited in support of the proposition that the taxes become a lien on the assessment date. The expression of the Court, 316 Mo. loc. cit., 296 S.W. 806, on the question involved here was obiter, correctly defined by a gentleman from Arkansas as  "That useless chatter of judges, indulged in for reasons known only to them, to be printed at public expense."
The same learned Judge, who spoke for the Court in the Waddell case, three years later in McAnally v. Little River Drainage District, 325 Mo. 348, loc. cit. 354, 28 S. W.2d 650, loc. cit. 651, said: "The lien of the state for taxes is established by an assessment of all land for that purpose. [Sec. 9747]. However, said lien does not accrue and become a fixed encumbrance until the amount of the tax is determined by an annual assessment of the land and annual levy of the tax. * * * The intention of the Legislature could not have been otherwise, for, as argued by respondents, `Can a lien exist until the amount of the charge has been determined? Can a charge be cancelled until it has been created? Can a sale of land in 1926 destroy a tax not to be determined and levied until in 1928? Can anything be destroyed prior to its creation? A landowner cannot pay the annual tax until after it has been determined, ordered and levied and certified to the Collector. How can it be contended that it is a lien until the owner of the property charged had an opportunity to discharge the so-called lien?' * * * It follows that at the time appellant purchased the land, the owner held title free of, but subject to, the lien of future installments of the estimated total tax."
The language quoted demonstrates that the highest Court of the State has ruled that real estate taxes do not become a lien until the levy is made and the amount of the tax definitely determined. It is stated in one of the briefs submitted that the Missouri Supreme Court announced a contrary rule in Dennig v. Swift & Co., 339 Mo. 604, 98 S.W.2d 659. That the Court did not pass upon the question in the latter case is clear from the following language of the opinion, 339 Mo. 604, 98 S. W.2d loc. cit.: "Our tax system has been the source of some confusion in the past as well as in the present case. Much of that confusion grows out of an effort to determine when the lien of the tax attaches under the provisions of the statute in the absence of any express agreement. We are not concerned with the latter question in *96 this case since the parties have, by the terms of the contract, fixed their respective obligations relative to the payment of taxes and submit the contract for interpretation. Under these circumstances our sole problem is to construe the agreement contained in the contract."
The conclusion expressed in the McAnally case is the rule heretofore followed by the Federal Court in this State and elsewhere. Bannon v. Burnes, 1899, C.C., 39 F. 892; United States v. Pierce County, 1912, D.C., 193 F. 529; United States v. City of Buffalo, 1931, 2 Cir., 54 F.2d 471. See, also, Gillmor v. Dale, 27 Utah 372, 75 P. 932; Jacobs v. Union Trust Co., 155 Mich. 233, 118 N.W. 921; Elwood v. Goldman, 158 App.Div. 805, 144 N.Y.S. 383; Id., 217 N.Y. 585, 112 N.E. 421; State v. Snohomish County, 71 Wash. 320, 128 P. 667; Bean v. Munger Land Co., Mo.App., 265 S.W. 844; State ex rel. Hinson v. Nickerson, 99 Neb. 517, 156 N.W. 1039; City of Portland v. Multnomah County, 135 Or. 469, 296 P. 48; In re Opinions of the Justices, 234 Ala. 358, 175 So. 690; City and County of Denver v. Tax Research Bureau, 101 Colo. 140, 71 P.2d 809; Territory ex rel. Devine v. Perrin, 9 Ariz. 316, 83 P. 361; Webb v. Bidwell, 15 Minn. 479, 15 Gil. 394; Gachet v. New Orleans, 52 La.Ann. 813, 27 So. 348. The curious may find contrary conclusions announced in City of Puyallup v. Lakin, 45 Wash. 368, 88 P. 578, also based on statute; Stephens v. First Nat. Bank, 166 Ga. 380, 143 S.E. 386; Security System Co. v. S. S. Pierce Co., 258 Mass. 4, 154 N.E. 190. The date upon which taxes are due does not determine the date when the lien of the tax attaches. Westhus v. Union Trust Co., 8 Cir., 164 F. 795, rehearing denied, 8 Cir., 168 F. 617. The conclusion heretofore stated is further supported by the declaration by the Legislature that the lien of taxes on receipts from insurance on permanent improvements should attach only in the event the taxes had been levied and assessed prior to the destruction of the improvements. Laws Mo.1933, p. 448, § 9963b, Mo.St.Ann. § 9963b, p. 8007.
Since the lien of the taxes attaches at the time of the levy it is necessary to determine when the levy occurs. The City authorities assess and levy all taxes on real estate within the City, including State taxes  Sec. 14706 et seq., R.S.Mo.1929, Mo.St.Ann. § 14706 et seq., p. 6091 et seq. The St. Louis Charter provides that the Board of Estimate and Apportionment shall submit and recommend to the Board of Aldermen a bill establishing the city tax rate for the fiscal year and further provides that if the Board of Aldermen should not establish the tax rate by ordinance on or before the fourth Monday in May, the rate last previously established shall be the rate for the current year. (St. Louis Charter, Art. 16, Sec. 3). It thus appears that the levy by the city authorities must occur prior to or on the fourth Monday of May. The Government took the title to the property involved on June 16, 1939. The levy of the 1939 taxes had, therefore, theretofore been made and a fortiori the lien of those taxes had attached.
Since by Sec. 14706, supra, the assessment is begun on June 1st and the report thereof made not later than January 1st following, and thereafter the levy is made, it is obvious that the levy of the taxes for 1940 has not been made. It follows from what has been heretofore said that the lien of the 1940 taxes had not attached on June 16, 1939, and the city is, therefore, not entitled to have distribution to it of any part of the funds in the registry of this Court on account of those taxes.
The question still persists as to what rights the City has relative to distribution to it of the 1939 taxes. If the real estate upon which those taxes were levied remained subject to taxation the question would be simple, but for all purposes now involved the subject of taxation, i. e., the real estate, passed out of existence on June 16, 1939, when the Government took title to it. The right of taxation of the character involved depends upon the private ownership of the property upon which the tax is imposed. If the property is withdrawn from possible taxation the right to impose a tax predicated upon the existence of that property for taxable purposes must fail. Reminiscences of early learning brings to mind the fact that the Boston Tea Party was prompted by the inequity of taxation without representation. What logic can support the action of a court of equity in permitting taxation without even ownership? The City argues that there is no legal authority for dividing an annual tax levy and directing the payment out of the impounded funds of only that part which represents the taxes for that part of the year during which the property was privately owned. The answer is that this is a proceeding in equity. The City has intervened, *97 claiming part of the fund. The Court is asked to distribute the funds according to the equities. Under those circumstances the Chancellor recognizes legal principles so far as applicable and adequate, but, in the language of Aristotle, equity is "the correction of that wherein the law by reason of its universality is deficient." Pocoke v. Peterson, 256 Mo. 501, 165 S.W. 1017, 1022. Or, as expressed by Blackstone: "Equity, then, in its true and genuine meaning, is the soul and spirit of law: positive law is construed, and rational law is made by it." Cooley's Blackstone, 4th Edition, Vol. III, p. 429.
Hence, the very fact that statutory guidance does not exist supports rather than prevents the application of equitable principles. In addition to the general principles noted, the act authorizing these proceedings provides: "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable." 40 U.S. C.A. § 258a.
The right of the City and State to a recovery of taxes out of the funds on deposit should be limited to that part of the 1939 taxes, which represents the tax on the real estate condemned, for that part of 1939 that the property remained subject to taxation, or, otherwise stated, while the status of private ownership continued.
In many instances the right of possession and use has been extended beyond Aug. 16, 1939. In such cases distribution will be made to the City for local and State taxes upon a pro-rata basis for that part of the year which the property remains in the use of private owners prior to attornment to the Government, after deducting the sixty days allowed heretofore for surrendering possession.
In cases in which possession was surrendered or attornment made within the original sixty days allowed, the distribution to the City will be made for taxes on a pro-rata basis for that part of the year ending on and including June 16, 1939. No penalties or interest will be allowed on 1939 taxes. Distribution to the City will be ordered on occasions appropriate to each individual case.
The first question stated, relating to when delinquent taxes should cease to draw the interest and penalties provided by the general revenue laws, remains for determination. These delinquent taxes are all for the calendar year 1938 and prior years. The obligation for their payment matured long before the appropriation of the title to the property upon which the taxes were levied, and was in no way dependent upon the determination of any question involved in these proceedings. The interest and penalties involved were imposed by Statute to accelerate payment of taxes when due. The responsibility for their non-payment rests wholly on the property owners. The acquisition of the property by the Government did not change the situation. Neither could the land have been used for the payment of the taxes before acquisition by the Government, nor have the funds which have replaced the land been available for that purpose up to the present time. The property owners knew the taxes were delinquent and that penalties and interest were accumulating for their non-payment. If they had wanted to stop the accumulation of interest and penalties they should have done so. These proceedings have in no way prevented them from doing so. The fact that an opportunity for partial distribution pending final determination of disputed questions has been made available, has aided and not prevented the payment of these past due obligations. However, the fact that the Court is now determining the City's right to so much of the funds as are necessary for the payment of these taxes and is withholding that amount from the taxpayer should be given some consideration, although as noted heretofore, that course has not placed the taxpayer in a worse position than he would have been absent the transfer of title. Evidently in order to avoid the imposition of any possible hardship the City has announced a willingness to stop the interest and penalties after the month of August, 1939. Such a course will be fair to the taxpayer and will be followed. Therefore, in computing the amount of interest and penalties on delinquent taxes the calculation will be made as of August 31, 1939.
Inasmuch as this opinion was provoked by the presentation of case No. 12,297, it will be filed in that case alone and a minute entry made in other cases pending in this division making the opinion applicable to those cases by reference.