THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS C. LUTHER, Appellant, *v.* WILLIAM MCDERMOTT et al., as Assessors of the Town of Stillwater, Respondents.

(Argued May 21, 1934; decided July 3, 1934.)

*John A. Slade, Irving I. Goldsmith* and *Arthur H. Vinett* for appellant.

*Robert Frazier* and *Sidney W. Hewitt* for respondents.

*John J. Bennett, Jr., Attorney-General (Eric J. Lake* of counsel), for State of New York, intervener.

CRANE, J.   We agree with the Appellate Division that section 13 (former section 16) of the Tax Law (Cons. Laws, ch. 60) is constitutional.   We do not share its opinion regarding the relator's application for the benefits of the act.

The law was passed for the purpose of encouraging the preservation of the forests and the devotion of land to reforestation.   To induce owners to devote their property to this public and necessary purpose, instead of using it for farming, reduced taxation for a period of time was offered.   This law reads in part as follows:   " In view of the benefits to the state and the political subdivisions thereof which will accrue through the reforestation of idle lands, upon compliance with the provisions of this section by the owner thereof, any tract of forest land of fifteen acres or upwards which has been planted with an average of not less than eight hundred trees per acre, or which has been underplanted with an average of not less than three hundred trees per acre,   *   *   *   shall be assessed separately, for purposes of taxation, upon the basis of the value of the land, exclusive of the value of such planted or underplanted trees, or natural reproduction and shall not be assessed at a higher valuation than similar lands without substantial forest growth situated in the same tax district, provided, however, that at no

time shall the land be assessed at a higher valuation than that at which it was assessed at the time the application for classification is filed as hereinafter provided. * * * To secure such assessment the owner of such tract shall file with the assessors of the tax district in which the land is situated, an application in duplicate, for classification under this act upon a form to be furnished by the conservation department. * * * The conservation department is hereby authorized to approve or disapprove the application. * * * All lands so classified shall come under the provisions of this act and the owner, his successors or assigns, and the state and its political subdivisions shall be bound thereby. Such land shall be subject to assessment in the manner and amount hereinbefore provided and no other, and shall continue to be so assessed so long as the forest growth shall remain uncut. Upon the removal of the forest growth, such land shall be assessed without regard to the provisions of this section."

The relator was the owner of 3,845 acres of land in the town of Stillwater, Saratoga county, New York, which the assessors of the town for the year 1931 had assessed at the valuation of $7,702. For the year 1932 the assessors raised the valuation to $23,070. On July 16, 1932, the relator made application to have these lands classified as forested and reforested lands, pursuant to section 13 of the Tax Law, above quoted, and claims that they can be assessed at no higher valuation than that of the 1931 assessment. The courts have been called upon to determine what was the assessment of these acres at the date July 16, 1932; was the assessment that of 1931 or that of 1932 as finally fixed by the closing of the assessment books on September 6, 1932? The statute is clear in directing that one whose lands have been classified cannot be assessed at any higher valuation than the assessment existing at the time the application for classification is filed with the Conservation Department. This injunction in this case is not affected by the fact that the application

was not approved until December 19, 1932, which merely put all the other provisions of the statute in force. What, therefore, was the assessment of July 16, 1932? (*Sikora Realty Corp.* v. *City of New York*, 262 N. Y. 312.)

The Tax Law, section 9, provides that " real property shall be assessed as of July first in the tax district in which it is situated." The courts below have taken this date as the time when the assessment for 1932 became effective. We think the Tax Law and the decisions under it do not lead to this conclusion. In *People ex rel. Twenty-third St. R. R. Co.* v. *Comrs. of Taxes* (91 N. Y. 593) this provision of the law was held to fix the taxable status of persons and property as of July first of each year. Such was also the holding in the prior case of *Mygatt* v. *Washburn* (15 N. Y. 316). The law in this particular has remained the same for many decades. The valuation, however, of the property thus fixed and determined in ownership and in location as of July first under the statute could not be finally determined until a later date. All information regarding value was gathered by the assessors prior to July first and thereafter tabulated, sifted and fixed as a valuation by not later than August first.

Section 20 of the Tax Law (prior to its amendment by Laws 1933, ch. 470) provided that the assessors in each tax district shall annually between January first and July first ascertain by diligent inquiry all the property and the names of all the persons taxable therein.

Section 36 (renumbered § 25, Laws 1933, ch. 470) requires the assessors to complete the assessment roll on or before the first day of August, and make out a copy thereof, to be left with one of their number, and forthwith cause a notice to be conspicuously posted in three or more public places in the tax district, stating that they have completed the assessment roll, and that a copy thereof has been left with one of their number at a specified place, where it may be seen and examined

by any person until the third Tuesday of August next following and on that day they will meet at a time and place specified in the notice to review their assessments.

By sections 38 and 39 the assessors shall swear to the correctness of the assessment roll. The words of section 39 have some significance: "When the assessment roll shall have been thus *finally* completed and verified, and the copy thereof certified the assessors shall, on or before the fifteenth day of September, file the said certified copy in the office of the town clerk, to remain for public inspection until delivered by the town clerk to the supervisor of the town as hereinafter provided." (See sections renumbered § 28, Laws 1933, ch. 470.)

The assessment is, therefore, not finally completed until the roll is subscribed by the oath of the assessors and delivered over to the clerk. These are not only the words of the statute, but we find this to be the interpretation given by the decisions. The court, in *Rundell* v. *Lakey* (40 N. Y. 513, 516), referring to these same provisions existing in previous tax laws, said: "This roll constitutes the basis upon which the tax is imposed by the board of supervisors. After its completion and delivery, there is no power to alter or change it. It is conclusive as to the persons and property for apportioning the sums to be raised by taxation. * * * That the time when they [owners] so became liable, was the time of the completion and delivery of the roll, although the amount of the tax was not ascertained and fixed for some two months afterwards, yet the foundation of the liability was complete." (See, also, *People ex rel. Gillies* v. *Suffern*, 68 N. Y. 321; *Lewis* v. *Petersen*, 241 N. Y. 268, p. 276; *Lathers* v. *Keogh*, 109 N. Y. 583; *United States* v. *City of Buffalo*, 54 Fed. Rep. [2d] 471.)

The procedure under the Tax Law is that July first of each year fixes the date at which status of the property and its ownership shall be taken for the purposes of assessment and taxation. There can be, however, no

assessment until the officials act and give public notice, in accordance with the statute, of their determination. By the first of August the assessment is to be fixed and notice given of grievance day, and by the fifteenth of September the roll is to be finally completed by the signatures and oaths of the assessors and delivery to the clerk. This procedure was followed in this case. On or about September 5, 1932, the assessors finally completed their assessment roll, according to their return; made and subscribed their oaths thereto; filed the same with the town clerk of the town of Stillwater and posted their notices in accordance with the law. Not until then was the assessment for 1932 complete.

We, therefore, find that on July sixteenth, when the relator made his application to classify his lands as forest lands, the property was not assessed and had not been assessed at $23,070. This did not come into existence, as we have said, until September fifth. The assessment on July 16, 1932, was the assessment of 1931, $7,702.

It may be well to state, in order to outline fully the relator's position, that he appeared on grievance day before the assessors and sought a reduction in the proposed assessment for various reasons, including the rights growing out of his application to the Conservation Department. The assessors having denied the relief, an order of certiorari was applied for within a few days or weeks thereafter. It is this proceeding which is before us; the question and the determination of the assessors are being reviewed, pursuant to the provisions of section 290 of the Tax Law. No claim is made that the assessors or the authorities may not or will not reduce the assessment, should their determination be reversed.

The orders should be reversed, with costs in all courts, and the appellant's assessment for 1932 reduced to $7,690.

POUND, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Ordered accordingly.