Michael E. Sweeney, J.
These four independent petitioners seek a review under article 7 of the Real Property Tax Law of certain assessments of lands owned by them in the Town of Long Lake, Hamilton County. The matters were argued at the same time since they all pertain to certain alleged illegal assessments made by the Assessors for the 1966 tax roll. The objections to the various assessments, hoivever, are not identical in all four petitions.
The general objections to the assessments are: (1) that the assessments of certain of the lands were illegally increased in violation of section 480 of the Real Property Tax Law (this particular statute will hereafter be referred to as the “ Fisher Act”); (2) that the methods and procedures used by the Assessors in establishing assessments of other properties by including shore frontage values were illegal; and (3) that assessments of property described as “ shore line values of all waters ” in certain townships do not relate to or adequately describe property that may be lawfully assessed.
*424 Subdivision 1 of section 720 of the Eeal Property Tax Law provides as follows: “1. If the court determines from the pleadings for any of the reasons alleged in the petition that the assessment being reviewed is illegal it shall order the assessment stricken from the roll, if erroneous or unequal, it shall order a reassessment of the real property of the petitioner or the correction of the assessment upon the roll, in whole or in part, in such manner as shall be in accordance with law or as shall make it conform to other assessments upon the same roll and secure equality of assessment.”
Most of the land in question has been designated “ Fisher Act ” property and it is the legality of the assessments of those lands and allied problems relating to the Fisher Act which will be discussed first. The pertinent parts of the Fisher Act are as follows:
“ § 480. Forest and reforested lands.
“1. In view of the benefits to the state and the municipal corporations therein which will accrue through the reforestation of idle lands, eligible tracts of forest land may be granted an exemption from taxation as hereinafter provided.
“2. As used in this section:
“ (a) ‘Eligible tract ’ means a tract of forest land of at least fifteen acres which has been planted with an average of not less than eight hundred trees per acre, or which has been underplanted with an average of not less than three hundred trees per acre, or upon which the majority of the mature timber has been removed in such a manner as to insure a crop of merchantable timber or pulpwood or upon which, at the time of classification, there is an immature stand sufficient to produce such a crop within thirty years. Any part of such tract covered by water, or consisting of a bog or ledge, or otherwise unsuitable for planting or underplanting, shall be excluded in determining the average number of trees planted or underplanted per acre.
“ (b) ‘ Forest land ’ includes not only lands on which there is tree growth, but also lands which are best adapted to tree growth.
“ (c) ‘ Planted ’ means the setting of suitable forest tree species.
“ (d) ‘ Underplanted ’ means the setting of suitable forest tree species upon land that at the time of planting has some natural forest growth.
“(e) ‘ Immature stand ’ means trees which are left primarily for forest crop production after the removal of a majority of the mature stand.
*425 “ 3. Eligible tracts shall be separately assessed for purposes of taxation upon the basis of the value of the land, including the value of any buildings or structures thereon, but excluding the value of such planted or underplanted trees or natural reproduction. The assessment of an eligible tract shall be no higher than the valuation of similar lands without substantial forest growth situated in the same town and at no time shall it exceed the valuation fixed at the time of application for classification is filed as hereinafter provided. Such land shall be so assessed so long as the forest growth shall remain uncut. Upon the removal of the forest growth, it shall be assessed without regard to the provisions of this section.”
Prior to the making up of the 1966 tax roll some 44,217 acres of forest land owned by the petitioner, Whitney Industries, Inc., hereinafter referred to as “Whitney”, and some 13,119 acres of forest land formerly owned by the petitioner Whitney which are presently owned by the petitioner Litchfield Park Corporation, were certified by the Conservation Department of the State of Ñew York as being eligible Fisher Act property. The tax records clearly indicate that the 1966 assessments of the so-called “ Fisher Act ” properties have been increased by the respondent Assessors subsequent to the land being certified by the Conservation Department.
It is the contention of the petitioners that the statute prohibits any increase in the assessed valuation after the land has been certified as Fisher Act property. It is the contention of the respondent Board of Assessors that its procedures were legal; that it did not increase the prior assessment, but simply placed a value on an attribute of the land not previously included. More specifically, the Assessors contend they designated certain areas of the forest properties owned by the petitioners as ‘‘ shore line property”, maintaining, at least inferentially, that this attribute increases the value of the particular area, and, while they had not used this method in previous assessments, they had the legal right to resort to it if they so desired. In other words, it is the position of respondent that the Fisher Act is not applicable to shore frontage lands within private forest lands which have been certified by the Conservation Department.
To justify their method of assessing “ shore line values ”, the Assessors point out that this method is recommended by the State Board of Equalization and Assessment. It is suffice to say that this circumstance in and of itself does not justify or legalize respondent’s method of assessing if the method otherwise violates an existing statute such as the Fisher Act.
*426 By the enactment of the Fisher Act the Legislature desired to encourage the preservation and reforestation of land in the State of New York. The act seeks to accomplish this by offering a tax concession to the owner of lands so designated. The act further provides the manner of obtaining a certification of lands as Fisher Act land and prescribes various conditions, restrictions and prohibitions in the use of the land.
This phase of the proceedings, therefore, narrows to a determination of whether once a tract of land has been duly certified as Fisher Act property, portions of that tract which border on water can be considered exempt from the Fisher Act by the taxing authority. This court cannot find where this precise question has ever been passed upon by our courts. The act itself does not answer the question by specifically referring to “shore line property”. The act does, however, refer to eligible tracts, defining same, and provides: ‘ ‘ Any part of such tract covered by water, or consisting of a bog or ledge, or otherwise unsuitable for planting or underplanting, shall be excluded in determining the average number of trees planted or underplanted per acre.”
The answer to this phase of the proceedings must be found in the language of the statute, aided by any light which may be shed on the intent of the Legislature from the history and circumstances surrounding the enactment of the statute. It is apparent from a reading of the act that the Legislature was aware that lands adapted to the growing of trees on the scale contemplated by the statute would, in many cases, include areas of water. The Legislature, however, made no distinction between the land in general and that bordering upon water. It did, however, "contemplate areas of land covered by water and not conducive to the growing of trees. The legislators equitably excluded such areas from the certified tract in determining the number of trees that had to be planted. How easy it would have been at this point to have excluded shore line property from the benefits of the act because the land could more readily and profitably be used for other purposes. This, the legislators, by their silence at least, failed to do, and I cannot conclude that it was through inadvertence.
From the language of the statute and the failure to specifically exclude ‘1 shore line property ’ ’, and being mindful of the historical purpose of the act to encourage the growing of trees, I must conclude that when a tract of land is certified as Fisher Act property, it includes all of the land within the certified tract, whether or not it borders on water. The owner of the land might conceivably extend his reforestation project right *427 up to the boundary of the water, or completely encircle the body of water. Even though the property bordering on a body of water might have greater value if otherwise used, such as for a camp or recreational purpose, the owner should be entitled to the protection and the benefits of the Fisher Act if there is a compliance with the act. There is no indication here that petitioners have not desired to use the shore line property as prescribed by the statute, or that they have not complied in all respects with the Fisher Act. A full compliance with the statute entitles the owner to the full benefits of the act.
It is, therefore, my opinion that the respondent Assessors did not have the statutory power to increase the assessment of any of the land contained within the tracts certified as Fisher Act property by the Conservation Department. When the Assessors placed shore frontage values on lands contained within petitioners ’ Fisher Act properties, the assessments were thereby increased, and where they have been so increased, it is illegal. Since these assessments are illegal they must be stricken from the roll. All of the petitioners, however, request in their petitions (and also mentioned it on the oral argument) that the assessments be restored to the valuations in effect at the time the application for certification as Fisher Act properties was filed. It is, therefore, my opinion that these assessments be so corrected by respondent.
The respondent has raised the question as to the constitutionality of the Fisher Act. This precise question was passed upon by the Court of Appeals in People ex rel. Luther v. McDermott (265 N. Y. 47) wherein the court held this act to be constitutional. While there have been some changes in the statute since the Court of Appeals passed upon it, I must conclude that the same ruling would apply here and the Fisher Act, as it exists at the present time, is constitutional.
Respondent also, in its answer in paragraph No. 58, asks this court to exclude certain portions of the lands designated by the certificate of eligibility issued by the Conservation Department. This court does not, at this time, have the authority to modify or change the decision made by the Conservation Department. If respondent was aggrieved by the decision of the Conservation Department the means and methods of challenging that decision are prescribed by statute, and since respondent did not avail itself of that procedure, it has waived it.
One of the allied problems pertaining to the Fisher Act was raised by a separate motion in which respondent seeks to have the Conservation Department of the State made a party to these proceedings. I do not believe that the Conservation *428 Department is either a proper or necessary party for a determi-. nation of these proceedings. The Conservation Department merely had the duty to determine whether the property was eligible for the benefits of the Fisher Act. This it did. It had nothing further to do which affects these proceedings.
Finally, petitioner Whitney claims to be entitled under the Fisher Act to a reduction for the timber growth value on its certified tracts, and asks the court to direct the respondent to correct the assessments upon the tax roll. so that all of its properties shall be separately assessed to exclude the value of timber growth thereon. Petitioner Whitney’s point is well taken. The act specifically requires that eligible tracts shall be separately assessed, excluding the value of planted or under-planted trees or natural reproduction thereon. Whether or not this had been done, however, is a question of fact which cannot be determined as a matter of law by this court, but only after a determination of the facts following a hearing on the matter.
The second objection raised by petitioners, and one which applies to all four proceedings, concerns the method used by respondent in assessing properties other than the so-called Fisher Act properties. I see nothing improper or illegal in adding valuations for shore frontage attributes to the general assessments of property described by township and lot number by using the additional words 1 ‘ includes shore line value. ’ ’ From the papers submitted here I must conclude that this is precisely what the respondent did. In the instant cases, however, this method was not uniformly applied to all shore line property owners. It is admitted in the pleadings that many property owners similarly situated did not receive increased assessments even though some of their property borders on water. It also appears from the papers and the oral argument that petitioners and a relatively few other larger taxpayers were subjected to this shore line value method of assessment.
I must conclude that this amounts to an unfair, unequal and illegal practice in assessing the properties of the town. The assessments of properties so increased should be restored to the valuations in effect on the 1965 tax roll. When the new tax roll is prepared, if respondent is going to resort to this method, it must be applied equally to all landowners so situated in the town.
As to the third objection outlined above, in Townships 35 and 36 on lands owned by petitioner Whitney which are not Fisher Act lands, the Assessors used the same general assessments they had used in prior years. They then separately assessed the shore frontage of all lakes and ponds located therein, to a *429 200-foot depth, and gave credit on the general assessment for a 200-foot depth frontage on the lakes and ponds having a shore frontage value on a dollar acreage adjustment. There was no intention that the general assessments for these townships include values for these 200-foot depths bordering the lakes and ponds. Because the descriptions previously used and also those used for the 1966 tax roll did not allow a ready identification of the particular bodies of water to be placed in the particular assessments, the Assessors used two separate assessments, i.e., (1) the general assessment giving credit for a 200-foot depth shore frontage value; and (2) shore line values of all waters in the township.
I conclude that the assessments of “ shore line values of all waters in Townships 35 and 36 ” are not adequate descriptions pursuant to subdivision 2 of section 502 of the Real Property Tax Law, which provides as follows: “ 2. Provision shall be made with respect to each separately assessed parcel of real property for the entry, in appropriate columns, of the name of the owner, last known owner or reputed owner and a description sufficient to identify the same, including the surnames of the abutting property owners and the names of the abutting streets or highways, the approximate number of square feet, square rods or acres contained therein or a statement of the linear dimensions thereof.” The assessments in Townships 35 and 36 of “ shore line values of all waters ” should be stricken from the tax roll.